STATE v. KENNETH D. RENFREW.

159 N. W. (2d) 111.

May 17, 1968—No. 40,562.

*C. Paul Jones,* State Public Defender, *Roberta K. Levy* and *Robert E. Oliphant,* Assistant State Public Defenders, and *Rosalie E. Wahl,* for appellant.

*Douglas M. Head,* Attorney General, *J. Jerome Kluck,* County Attorney, and *Jack A. Mitchell,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

Defendant appeals from a conviction for aggravated robbery[1] for which he has been sentenced to the Youth Conservation Commission for a term up to 20 years. The only issue is whether a written confession was properly received in evidence.

Defendant, then 20 years of age, was charged with having beaten an elderly woman and having taken her purse containing $300 on February 7, 1966. He was arraigned in the District Court of Dakota County on May 18, 1966, at which time he was represented by counsel. Thereupon he made a motion to suppress a confession which he had signed on February 22, 1966. A hearing was conducted on June 1, 1966, pursuant to the rules adopted by this court in State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3, and by the United States Supreme Court in Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. ed. (2d) 908, 1 A. L. R. (3d) 1205. The court denied the motion on June 13, 1966, and sent the matter out for trial on June 15, 1966. The jury found defendant guilty.

Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694,

---

[1] Minn. St. 609.245.

10 A. L. R. (3d) 974, was not released until June 13, 1966. No copy of that decision was furnished court or counsel at defendant's trial 2 days later. The question is whether his confession was obtained under conditions which substantially satisfied the requirements of the Miranda decision. We hold that it was.

At the time of his arrest on February 16, 1966, defendant was living with his mother. A few days thereafter she was visited by two police officers, one of whom was a personal acquaintance. She testified she told the officers she was anxious for her son to disclose the facts because she felt he would thereby receive leniency. She admitted the officers made no promise that her son would receive probation or any lighter sentence. Nevertheless, because she believed his sentence might be reduced, she asked the officers to interview defendant. She herself went to the county jail for that purpose and urged defendant to "tell the truth that it would be much easier and that he could get 20 years." In response, he requested her to have the officers visit him in jail.

Defendant testified that he had consulted his attorney before he conversed with either his mother or the police, and that his attorney had advised him not to talk to anyone. He said his mother urged him to sign a confession. He agreed to see the police but wished to consult his attorney first. Defendant further testified that the interrogating officers promised that if he signed a confession "it would be a lot easier on me," and that they would have the charge reduced. He acknowledged he was warned that his statement could be used against him in court. He read it before he signed it and admitted that his attention had been called to a printed recitation at the beginning of the confession which stated as follows:

"I, Kenneth D. Renfrew HAVING been advised of my rights under the FIFTH AMENDMENT to the CONSTITUTION as to compulsory self incrimination, my right of counsel and my right of trial, and knowing that anything that I say may be used against me in a court of law, I hereby waive my right of counsel before making this statement, and knowing that I do not have to make any statement at all do hereby volunteer the following to Ass't. Chief Scheibel & Det. Lt. Trost who has identified himself as West St. Paul Police officers."

Defendant testified that because he was nervous and depressed, he was unable to write, and consequently the confession was transcribed in the hand of one of the interrogating officers. He concluded by reiterating that he was promised "a better deal" if he signed the confession.

One of the police officers who obtained the confession stated that he advised defendant of his right to remain silent and to have an attorney, and defendant was given an opportunity to use the telephone. He denied making any promises or suggesting any possibility of leniency. As a result of the confession, the police recovered the purse which had been taken from the robbery victim. It was offered and received in evidence.

In essence the Miranda rule requires the following (384 U. S. 479, 86 S. Ct. 1630, 16 L. ed. [2d] 726, 10 A. L. R. [3d] 1014):

"* * * [Defendant] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

We are of the opinion that there was substantial compliance with the Miranda rule.[2] The printed material which prefaced the confession, and

---

[2] Commonwealth v. Wilbur (Mass.) 231 N. E. (2d) 919, 923, held: "* * * We think the warning principles announced in the Miranda case must be applied reasonably and with common sense and do not constitute an arid, ritualistic formula to be administered inflexibly. We assume that the principles are designed to achieve the substance of protection of defendants requiring protection and not to penalize (for minor and nonprejudicial failure to adhere to a precise formula) law enforcement officials intelligently attempting in good faith to afford arrested persons considerate treatment and due process of law. Particularly must this be so, when

which defendant acknowledged seeing, warned him that he did not have to make a statement and that he had a right to counsel before doing so. Although defendant claimed he wanted to see his lawyer before being interviewed, he does not dispute the fact that he invited the police to see him at the urging of his mother.

Even where a defendant voluntarily and intelligently waives his constitutional rights, we strongly disapprove of in-custody interrogations if defendant is represented by counsel and counsel has not had an opportunity to be present at the questioning. However, we cannot say that under the circumstances of this case the trial court was not justified in receiving the confession in evidence. Defendant acknowledged that his attorney had advised him to remain silent. He had read the printed warning. The trial court could find he was fully aware of his right to have counsel present. He testified that the police had advised him that the statement could be used against him in court. Consequently, it seems clear that whatever pressures may have been exerted did not stem from any police activity, at which the Miranda decision was aimed, but resulted from his mother's conviction that he would be dealt with more leniently if he cooperated with the authorities. Since, in our opinion, the record supports a finding that the confession was given voluntarily and with an understanding of defendant's constitutional rights, we hold that it was properly received in evidence. The verdict of guilty is therefore sustained.

Affirmed.

action which occurred before the Miranda decision (so that police officers could not anticipate what was later to be decided), is being considered in connection with a trial begun after that decision."