Michael Dean GIDDINGS, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. 49094.

Supreme Court of Minnesota.

Jan. 11, 1980.

**596**

C. Paul Jones, Public Defender and Eva-lynn B. Welling, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Alan L. Mitchell, County Atty., Peter M. Banovetz and John E. Desanto, Asst. County Attys., Duluth, for respondent.

Heard before PETERSON, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

Duluth police were called to investigate a family dispute which resulted in Michael Giddings being charged with aggravated assault. At his arraignment, the public defender's office was assigned the defense. Subsequently, police obtained a statement which was used against Giddings at trial. Prior to giving the statement, Giddings signed a *Miranda* waiver, but indicated he was being represented by the public defender's office. Giddings' attempt to suppress the statement on the grounds that it was given without notifying his defense counsel was denied. We reverse.

In the early morning hours of January 3, 1976, two Duluth police officers were called to defendant's residence to settle a dispute between defendant and his brother. While attempting to determine the nature of the dispute, one of the officers pushed defendant's brother. At this point, defendant entered the room holding a pair of "num-chucks"—two pieces of wood connected by a rope—and requested that the officer leave

his brother alone. The officer then approached defendant and told him to drop the numchucks. As the officer approached, defendant retreated and at one point dropped one of the numchuck sticks, a movement that is necessary before the numchucks can be used as a dangerous weapon. The officer subdued defendant before the numchucks were used and took him into custody on a charge of aggravated assault.

On January 5, 1976, defendant appeared in county court and the public defender was appointed to represent him, but no specific attorney from the public defender's office was assigned to his case. Defendant testified that he assumed he would meet with his attorney at his next court appearance.

In the late afternoon of January 7, 1976, two investigating officers from the Duluth Police Department went to defendant's home to obtain a statement from him. The officers orally advised defendant of his rights, which he acknowledged by signing the written waiver form. Defendant then signed a statement that he had one of the officers write out for him. Defendant testified that he agreed to talk to the officers because he thought he would be helping himself since the officers said they wanted to help him, and he thought that any statement he made would not be used against him. Prior to giving the statement, defendant had no contact with his attorney, and the officers acknowledged that at the time of the questioning they were aware that the public defender had been appointed to represent defendant. The officers did not harass defendant in any way; on the contrary, they were very friendly and even took pictures of defendant's infant child. Defendant's statement, which was introduced at trial by the prosecution, included the following damaging remark: "I backed into the kitchen with my numchucks *in an attack stance.*" (Emphasis added.)

■ 1. We have examined the record and find that there was sufficient evidence for the jury to find that defendant did commit an assault with a weapon capable of producing serious injury. Thus, defend-

ant's contention that there was insufficient evidence for a finding of aggravated assault is without merit.

2. The critical issue in this case is whether the trial court erred in admitting the investigating officers' testimony concerning defendant's statement. Defendant argues that the investigating officers violated his sixth amendment right to counsel by interrogating him in the absence of his appointed attorney.

■ Under the facts of this case, since adversary proceedings had commenced against defendant, there can be no dispute that the right to counsel had attached. *Brewer v. Williams*, 430 U.S. 387, 401, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).[1] Since defendant's sixth amendment rights were applicable, the interrogation of defendant in the absence of his attorney was improper unless defendant gave a valid waiver of his rights.

■ The United States Supreme Court has adopted a strict standard of waiver of the right to counsel.[2] While a defendant can waive his right to counsel,[3] the courts indulge in every reasonable presumption against waiver, and the government has the heavy burden of showing that the defendant understood that he had a right to have counsel present during an interrogation and that he intentionally relinquished or abandoned that known right. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In deciding whether the government has satisfied its greater burden, it is important to consider the particular facts and circumstances surrounding the case, including the age, experience, and background of the defendant.

■ 3. Applying this standard to the facts of this case, we conclude that defendant did not validly waive his right to counsel. The officers, when they arrived to talk with Giddings, created a casual situation. They said they were seeking to help the defendant. They took pictures of his baby. Giddings assumed that what he told them would not be used against him. The statement was written by the officer and includes excerpts from the conversation. At the very outset of the conversation, Giddings advised the officers that he was represented by the public defender's office but that he did not know the name of the attorney assigned to the case. The officers testified that they were aware that Giddings was represented by the public defender. The officers knew the name of the public defender in Duluth and how to reach his office. They could have advised Giddings how to contact him so as to ascertain the name of his appointed counsel, or they could have contacted the public defender's office themselves. They chose to do neither and now seek to rely on the written waiver of counsel executed by Giddings.[4]

■ 4. Under the facts and circumstances of this case, we find that the state

1. Defendant was not in custody when the interrogation took place. This fact is not important, however, since, unlike the fifth amendment, the sixth amendment guarantees apply regardless of whether the defendant is in custody. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

2. Some courts have taken the position that there is a higher standard for waiver of sixth amendment rights than for fifth amendment rights. *United States v. Massimo*, 432 F.2d 324, 327 (2nd Cir. 1970); cf. *Brewer v. Williams*, 430 U.S. 387, 435, n. 5, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), White, J., dissenting.

3. Defendant takes the position that a per se rule should be adopted that statements obtained from an accused in the absence of his retained counsel are inadmissible regardless of any waiver by defendant. We decline to adopt

such a rule. *See Brewer v. Williams*, 430 U.S. 387, 405, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). We reassert, however, our disapproval of both custodial and noncustodial interrogation of defendants who are represented by counsel. *State v. Fossen*, 255 N.W.2d 357 (Minn.1977).

4. The state suggests that *United States v. Johnson*, 529 F.2d 581 (8th Cir. 1976), should apply. There, the court found that the defendant had waived his right to counsel. We note that this decision was rendered prior to the United States Supreme Court's decision in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Further, we observe that it is factually distinguishable since the interrogating officers did not know that counsel had been appointed to represent the defendant.

has failed to satisfy its weighty burden of proving a knowing and intelligent waiver. *Cf. State v. Crisler*, 285 N.W.2d 679 (Minn. 1979). As a result, it was error for the trial court to admit the officers' testimony concerning the defendant's statement. Because there is a reasonable possibility that the jury might have considered the improperly admitted evidence in reaching its verdict, defendant has been prejudiced. *See State v. Roberts*, 296 Minn. 347, 208 N.W.2d 744 (1973). Accordingly, we reverse and remand for a new trial.

Reversed and remanded.