**UNITED STATES of America**

v.

**SAM GOODY, INC., George Levy and Samuel Stolon, Defendants.**

**Nos. CR 80–507, XCR 80–95.**

United States District Court,
E. D. New York.

July 27, 1981.

E. R. Korman, U.S. Atty., E.D.N.Y. by John Jacobs, Sp. Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Dewey, Ballantine, Bushby, Palmer & Wood by Kenneth H. Holmes, New York City, for Sam Goody, Inc.

Gold, Farrell & Marks by Martin Gold, New York City, for Stolon.

### MEMORANDUM AND ORDER

PLATT, District Judge.

This case, involving a sixteen-count indictment charging defendants with violations of 18 U.S.C. § 1961 ("RICO"), 18 U.S.C. § 2314 (interstate transportation of stolen property), and 18 U.S.C. § 2318 (crim-

inal copyright violations),[1] was tried to a jury during the month of March and the first few days of April. At the conclusion of the government's case and upon motion by defense counsel, the Court entered a judgment of acquittal on Indictment Count Nos. 1, 9, 12, 13, 14, 15 and 16 against Sam Goody, Inc. ("the Corporation") on Indictment Count Nos. 9, 12, 13, 14, 15 and 16 against Samuel Stolon and on all counts in the Indictment against George Levy, the prosecutor conceding on the oral argument of defendant Levy's motion that the government's evidence against him was insufficient.

At the conclusion of the entire case the Corporation and Samuel Stolon moved to dismiss the remaining counts against them and their motions were denied.

After deliberating for five and one-half days the jury returned a verdict against the Corporation on Indictment Count Nos. 3, 4, 6, 7 and 8 and against Samuel Stolon on Indictment Count Nos. 4 and 6 and acquitted both defendants on all of the remaining Counts against them. Defendants are now moving, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for judgments of acquittal or, alternatively, pursuant to

Rule 33 of the Federal Rules of Criminal Procedure, for a new trial.

▉▉▉ In passing upon defendants' motions to set aside the verdict, we must consider all of the evidence in the light most favorable to the government and can only overturn a guilty verdict if no reasonable mind could fairly find guilt beyond a reasonable doubt. *See United States v. Artuso*, 618 F.2d 192 (2d Cir. 1979), *cert. denied*, 449 U.S. 861, 101 S.Ct. 164, 66 L.Ed.2d 77 (1980). Under that standard of review we think the evidence, viewed in each instance in its entirety, is sufficient to sustain the findings (i) that the defendants knew the tapes and cassettes were counterfeit, (ii) that the tapes and cassettes were shipped by the defendants in interstate commerce, (iii) that the value of the sound recordings so shipped exceeded the requisite amounts, and (iv) that the copyrights in question were valid.[2] Consequently, we must deny defendants' motions for acquittal.

▉▉▉ Defendants' motion for a new trial, "to further the interests of justice," however, presents entirely different matters for our consideration.[3] It is this Court's belief

---

1. These statutes and other matters were the subject of an earlier opinion of this Court, *United States v. Sam Goody, Inc.*, 506 F.Supp. 380 (E.D.N.Y.1981), familiarity with which is assumed here.

2. The defendants argue that our charge to the jury concerning copyright validity was erroneous in that it "in effect ... charged that ... the registration certificates in this case were conclusive evidence of the validity of the copyrights." *Defendants' Memorandum In Support of Motion for Post Trial Relief* at 21. The defense ignores, however, the language of our charge which echoed the statute governing copyright validity and then stated that "the evidentiary weight to be accorded the certificate ... shall be within the discretion of the fact finder." The defendants further argue that the validity of the copyright cannot be proven by the certificate itself and that the Court's charge impermissibly shifted the burden to them to rebut the copyrights' validity. Given our instruction to the jury, we do not think this argument to be a sound one. We charged the jury that the certificate was *prima facie* evidence of copyright validity but that they, the fact finders, could do with that evidence what they wished.

Although we do not believe the jury could have been misled by our charge into thinking that any burden was shifted to the defendants, on the retrial required for reasons stated herein, it may be advisable, in an excess of caution, specifically to instruct the new jury that no shifting of burden occurs by reason of the statutory language and to reiterate that while the certificate constitutes some evidence of validity, it is for the jury to determine what, if any, weight is to be accorded the same. For a recent discussion of the difference between shifting burdens and permissible inferences, *see generally*, Schmolesky, *County Court of Ulster County v. Allen*, and *Sandstrom v. Montana: The Supreme Court Lends an Ear but Turns its Face*, 33 Rutgers L.Rev. 261, 304–308 (1981).

3. At various times prior to and during the trial itself, the defendants made motions for relief on the ground of prosecutorial misconduct. While we predicate our decision to grant a new trial only on the grounds indicated in the text, we were deeply disturbed by various things done and not done by the government in this case prior to and even during trial. For example, while it may not, in itself, be unconstitutional or illegal (*see United States v. Sam*

that defendants are entitled to a new trial, first, "because of the distinct risk that the jury was influenced in its disposition of this [case] . . . by the allegations of the RICO count," *United States v. Guiliano*, 644 F.2d 85, 88 (2d Cir. 1981); second, because of the false testimony of the Government agent and the prosecutor's failure to correct this false testimony prior to the conclusion of the Government's case even though the Court furnished to the prosecutor authority in this Circuit requiring the Government to do so, *see Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States ex rel. Washington v. Vincent*, 525 F.2d 262 (2d Cir. 1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d, 341 (1976),[4] and third, because of the possible cumulative adverse affect that the various unproven charges may have had upon the jurors' deliberations.

The risk that all of these conditions may have tainted the jury's deliberations requires this Court, pursuant to Rule 33, to exercise its discretion to order a new trial in the interests of justice. *See United States v. Weinstein*, 452 F.2d 704 (2d Cir. 1971), *cert. denied sub nom. Grunberger v. United States*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). *Cf. United States v. Perez*, 565 F.2d 1227 (2d Cir. 1977).

■ The Second Circuit has already expressed its concern about the government's use of a RICO count which it is not able to sustain. *See United States v. Guilano, supra*, 644 F.2d at 89. Granting that the facts of the instant case are much different from the *Guilano* facts, we nevertheless remain concerned about the effect of the RICO charge, particularly the "racketeering" implications contained therein, upon the jury's deliberations. While we did hold, in our earlier opinion on the matter, that defendants could properly be subject to a RICO charge, we did not, at that time, have all the evidence in the case before us. Having heard and seen the evidence and having expressed our doubts about the proof along the way, we are now in a position to consider the effect that the RICO charge may have had upon the jury and believe that there *may* well have been some prejudicial impact particularly when the jury came to consider the slim (albeit sufficient) circumstantial evidence produced on the issues of shipments in interstate commerce[5], knowl-

*Goody, Inc.*, 506 F.Supp. at 393–94), we believe that it was unethical for the government to "wire" an informant and send him to one of the defendants' offices in an attempt to elicit incriminating statements *after* that defendant's attorney had presented himself to the prosecutor and told him to deal with his client only through him (the attorney). *See Code of Professional Responsibility*, DR 7–104. Moreover, we are also troubled by the prosecution's concession at the conclusion of the government's case that the evidence against Mr. Levy was insufficient. In good conscience it seems to us that concession was, to put it mildly, belatedly made. Other actions taken by the prosecution such as minimizing their association with the RIAA in the pursuit of this case, the continuation of the grand jury investigation after the indictment was returned, and its inconsistent positions with respect to the "related case" nature of the case against George Tucker on the one hand and the unrelated nature of the case against Frank Carroll, were and are also very troublesome.

4. This Court called the Government's attention to the *Washington* case at the time that the FBI agent recanted his false testimony outside of the presence of the jury. Despite repeated admonitions to the prosecutor to correct this tes-

timony, he failed to do so prior to resting the Government's case. It was only because the Court advised the prosecutor at that juncture that the Court would grant a new trial to the defendants on this ground that the prosecutor moved to reopen the case and made an effort to correct the concededly false statements given by the government's agent.

FBI Agent Ferri's testimony concerned the destruction of notes taken in connection with his interviews of key government witnesses and was unquestionably relevant and material. *See United States v. Bufalino*, 576 F.2d 446 (2d Cir.), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978).

5. The Government contends that defense counsel for the Corporation conceded that the counterfeit tapes were shipped in interstate commerce and directs this Court's attention to defense counsel's opening remarks when he stated that the tapes bought from the counterfeiters were shipped to Minneapolis (Tr. at 583–584). This Court takes no position on whether this statement could be considered a formal concession but we do note that defense counsel's statements to the jury could be construed by that body to be a concession and, as such, it could have played a part in their consideration of the facts of the case.

edge and copyright validity. *Id.* at 1768–69. Therefore, while in a normal case we might not order a new trial on this ground alone, the totality of the circumstances constrains us to consider important the prejudice engendered by the unsustained RICO count. Thus, the "taint" of the RICO count, to wit, "tarring the defendant with the label of 'racketeer' ", *id.*, taken together with the prosecution's use of false testimony and the failure of proof on the other unsustained counts caused defendants to suffer such substantial prejudice that a retrial is required. *See id.; see also, United States v. Armocida*, 515 F.2d 29 (3d Cir. 1975).

 In this connection, under the relevant case law the prosecutor had a duty, upon learning of the false testimony given by the Government agent, to correct the same promptly and put the truth before the jury. In this case, the government failed to give the jury the proper version and apparently had no intention of doing so, even though the Court furnished the prosecutor with the law on the subject, for it rested its case, despite our admonitions, without making any effort to get the truth to the jury. Only after the Court, in effect, directed the government to do so did it correct the false testimony. By that time, many days after the false testimony had been given, much, if not all, of the significance of the falsity of the testimony may well have escaped the jury. Moreover, but for the intervention of the Court in the presentation of the case, the government's error and misconduct would never have been corrected and the defendants would unquestionably have been entitled to a new trial. In the normal case, such failure on the part of the government to correct promptly the false testimony and such limited intervention on the part of the Court might not warrant the relief sought herein. However, as indicated, this was not a normal case; the false testimony sat before the jury for a long period of time and there is a strong possibility that it influenced their consideration of the rest of the evidence. *Cf. United States v. Antone*, 603 F.2d 566 (5th Cir. 1979). In addition, this was not the first but the second time that the Court was put in the position of having to correct errors of the government. *See United States v. Sam Goody, Inc.*, 506 F.Supp. 380, at p. 384 (E.D.N.Y.1981).

Under these circumstances, in this Court's view, the defendants are entitled to a new trial without the stigma of the RICO charges and without the government's attempted coverup of the false statements given by its agents. We also note, though we have not deemed it worthy of much discussion, that the retrial will be free from the prejudice of the many unproven charges levelled against the defendants, which charges might also have had a cumulative adverse effect on the merits of the case against them in the minds of the jury. We do not grant this motion lightly; this case took one month to try and we hesitate to burden further the judicial resources of this District. Nevertheless, we believe there was substantial prejudice suffered by the defendants here as a result of the factors enumerated above and must, in the interests of justice, order a new trial.

Accordingly, we deny defendants' motions to dismiss but grant their motion for a new trial on the remaining counts of the indictment.

SO ORDERED.