STATE of Minnesota, Respondent,

v.

Robert L. JOHNSON, Appellant.

No. C4–86–1262.

Court of Appeals of Minnesota.

April 7, 1987.

Review Denied May 20, 1987.

Hubert H. Humphrey, III, Atty. Gen., Jerilyn K. Aune, Sp. Asst. Atty. Gen., St. Paul, James E. O'Neill, Pipestone Co. Atty., Pipestone, for respondent.

C. Paul Jones, Public Defender, Cathryn Y. Middlebrook, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Robert L. Johnson was convicted of two counts of assault in the second degree in violation of Minn.Stat. § 609.222 (Supp.1985). On appeal, appellant claims his arrest was illegal and the trial court erred in not suppressing his statements made while in the custody of the police and the pistol found during a search outside his residence. Appellant also asserts his rights were violated by the admission of that evidence because it was obtained following appellant's invocation of his right to counsel. We affirm.

## FACTS

On November 17, 1985, gunshots were fired into the homes of Russell Harmsen and Donald Johnson. Earlier that day both Harmsen and Johnson were at the Glass House, a bar and restaurant located in Ihlen, Minnesota, a town of approximately 129 people. Appellant had also been at the bar.

Harmsen told Deputy Sheriff Dan Delaney who investigated the incidents that he suspected appellant because appellant had left the bar shortly after Harmsen. Donald and Lorraine Johnson told Deputy Delaney that they also thought appellant, Donald's brother, was doing the shooting. They said that appellant had been acting strangely at the Glass House, looking at them but not speaking. The relationship between appellant and Donald Johnson had been estranged over the last few years, apparently over the dissolution of a farm partnership. Lorraine Johnson knew of threats appellant had made against her, and Donald Johnson had once been assaulted by appellant.

Deputy Delaney called Pipestone County Sheriff Ronald Smidt for back-up. The sheriff knew there had been past disagreements between appellant and his brother, Donald, and that bad feelings existed between them. Sheriff Smidt was also personally acquainted with appellant. Based in part on his personal knowledge of appellant, Sheriff Smidt called the Rock County Sheriff's office and told them he was looking for appellant, who was possibly at his parents' home in Luverne, located in Rock County.

Rock County law enforcement officers found appellant at his parents' home in Luverne and transported him to the Luverne Law Enforcement Center. When Sheriff Smidt and Deputy Delaney arrived, they read appellant his Miranda rights, but did not inform him he was under arrest. Appellant stated he did not think he should answer any questions until he talked to a lawyer.

The officers did not question appellant, but may have informed him he would be accompanying the officers to Pipestone. Appellant asked the officers what the matter was all about. Sheriff Smidt informed him they were investigating the shooting incidents at the Harmsen and Johnson homes. Appellant stated he did not do it,

explaining his car and pistol had been previously stolen. He told the sheriff that if they did not believe him they could search the Thunderbird he had been driving, which was at his parents' home.

The three proceeded to appellant's parents' house, and found the Thunderbird parked on the street. Appellant opened the car doors and trunk and encouraged the officers to make a thorough search. The search revealed nothing. Appellant also told the officers to feel free to search his room in his parents' house. While Sheriff Smidt was searching appellant's room, appellant left the house. Deputy Delaney followed him outside and observed him standing by a red Chevette in the driveway. Under the Chevette Delaney saw a pistol case. Appellant observed Delaney and said, "Leave it lay. Can you leave it lay, Dan." Delaney responded negatively and appellant said, "Okay, it's over." Delaney confiscated the pistol case and found it contained a pistol.

During the trip back to Pipestone, the officers did not question appellant other than to ask him if the gun was loaded and where his wife lived. Appellant indicated all the cartridges had been expended. Appellant asked whether anyone had been hurt, and he was informed no one was hurt. He indicated he was upset with Russell Harmsen over a $500 loss some years ago and admitted shooting at the two houses.

After arriving at the Pipestone Law Enforcement Center, the officers read appellant a *Miranda* warning and asked him for a written statement. Appellant admitted shooting at Russell Harmsen's house, but refused to answer most of the other questions. He later changed that admission to indicate he would rather not answer the question regarding the Harmsen residence.

Appellant was convicted of two counts of assault in the second degree and sentenced to concurrent terms of one year-one day and thirty-six months.

## ISSUES

1. Did the trial court err by not suppressing the statements appellant made while in police custody and the gun the police found because they were products of an illegal arrest, not based on probable cause?

2. Did the trial court err in not suppressing appellant's statements and the gun because they were obtained in violation of appellant's right to have counsel present?

## ANALYSIS

### I.

Appellant claims the statements made while in police custody and the gun found during the search at his residence should not have been admitted into evidence because they were products of an illegal arrest, not based on probable cause.

██ There is probable cause for an arrest if

an officer in the particular circumstances, conditioned by his own observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested.

*State v. Sorenson*, 270 Minn. 186, 196, 134 N.W.2d 115, 123 (1965). The objective facts must lead a person of ordinary care and prudence to entertain a strong and honest suspicion that the suspect committed the crime. *State v. Johnson*, 314 N.W.2d 229, 230 (Minn.1982).

██ The facts of the present case were sufficient to give the sheriff probable cause for the arrest. The shootings occurred in and near a town with approximately 129 people. Only two houses were shot at and the owners of those two houses had been sitting together in a bar just prior to the shootings. Appellant was in the same bar and had been acting strangely towards the two homeowners, staring at them and not speaking. The shootings occurred shortly after Russell Harmsen and appellant had left the bar. Both Harmsen and Donald and Lorraine Johnson had reasons to believe appellant committed the of-

322

fenses. The relationship between appellant and Donald Johnson was estranged. The sheriff was aware of their poor relationship and of past incidents between them. The sheriff could have reasonably believed that appellant fired the shots into the homes and therefore had probable cause for the arrest.

Further, the evidence was not obtained by the exploitation of the arrest, but was instead obtained as an independent product of appellant's free will. *See State v. Weekes*, 268 N.W.2d 705, 709 (Minn. 1978). Appellant himself invited the officers to search the car and his room. His statements were spontaneous reactions to the discovery of the gun.

### II.

Appellant claims his rights were violated because the trial court did not suppress evidence, which was obtained after he invoked his right to counsel. Custodial interrogation of a suspect in the absence of an attorney is improper, unless the suspect waives his right to counsel. *Giddings v. State*, 290 N.W.2d 595, 597 (Minn.1980). The State has the burden of proving a knowing and intelligent waiver. *Id.* at 597–98. Once a suspect asserts his right to counsel, there should be no further interrogation. However, if the accused initiates further communications with the police, his voluntary or volunteered statements may be used at trial, even if the statements were made prior to the accused having access to counsel. *Edwards v. Arizona*, 451 U.S. 477, 485–86, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). Whether statements have been volunteered is to be determined by applying a totality-of-the-circumstances test to the facts of each case. *See State v. Jackson*, 351 N.W.2d 352, 355 (Minn.1984).

In the present case, appellant was fully informed of his constitutional rights and stated that he had better talk to an attorney before answering any questions. After this request, the officers did not question him further. Appellant instead questioned the officers, asking what the matter was all about. Upon hearing the officers' explanation, appellant immediately denied the shootings, claiming both his pistol and car had been stolen, and invited the sheriff to search his car.

The officers did not interrogate appellant while they searched his car and room. Officer Delaney observed appellant's pistol case laying in the driveway in "plain view." Appellant then began making incriminating statements and admissions and continued to do so during the ride back to Pipestone, even though he was not questioned or interrogated concerning the shooting incidents.

We conclude appellant's statements were voluntary and appellant's constitutional rights were not violated by the admission of the statements or the gun. Although appellant initially invoked his right to counsel during the custodial interrogation, he then initiated communications and the search of his car and room, which resulted in the discovery of the gun and appellant's subsequent admissions.

### DECISION

The trial court did not err in admitting appellant's statements and the pistol discovered outside his residence. The admissions and pistol were not the fruits of an illegal arrest and were not obtained in violation of appellant's rights.

Affirmed.