STATE of Minnesota, Respondent,

v.

Michael Shane LEFTHAND, Appellant.

No. C2–91–1937.

Supreme Court of Minnesota.

Aug. 28, 1992.

John M. Stuart, State Public Defender, Melissa Sheridan, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Alan L. Mitchell, St. Louis County Atty., Mark S. Rubin, Asst. St. Louis County Atty., Duluth, for respondent.

WAHL, Justice.

Appellant, Michael Shane Lefthand, was convicted, following a jury trial in St. Louis County District Court, of first-degree murder [1] in connection with the deaths of John Loons and Ronald St. Germain and sentenced to life imprisonment. Appellant challenges the admission of statements made in the course of a court-ordered psychiatric examination and other statements obtained by police without notice to or the presence of his court-appointed public defender. We reverse.

The relevant facts, briefly stated, are these. In the late afternoon of October 5, 1990, the bodies of John Loons and Ronald St. Germain were found on the living room floor of Loons' Duluth apartment. Within hours, police officers arrested appellant and Charles Bluebird.[2] At appellant's first appearance in District Court, a public defender was appointed to represent him. When appellant refused to leave the jail cell area or even his bed to talk to his public defender, out of concern over appellant's mental competence to proceed, the public defender moved for suspension of the criminal proceedings pending a mental health evaluation pursuant to Minn. R.Crim.P. 20. Following a hearing on October 22, 1990, appellant's motion was granted by order dated October 26, 1990. Meanwhile, on October 24, 1990, with permission from the prosecutor assigned to the case, but without notification to appel-

lant's public defender, Duluth police obtained a taped statement from appellant. Appellant was subsequently examined by a court-appointed psychiatrist who found him competent to stand trial. Over objection at trial, the state was allowed to cross-examine appellant with statements he had made during the court-ordered Rule 20 examination. Also over objection in its case in chief, the state was allowed to use statements obtained without notice to appellant's court-appointed attorney on October 24, 1990.

Rule 20 prescribes detailed procedures to be followed when it appears a defendant may be incompetent to stand trial (Rule 20.01) and when the defense of not guilty by reason of mental illness or mental deficiency is asserted. (Rule 20.02). An order for a compulsory mental examination under Rule 20.01, subd. 2 is authorized when there is reason to doubt the competency of the defendant; but an order for a compulsory mental examination under Rule 20.02, subd. 1 is activated only by a defense notice under Rule 9.02, subd. 1(3)(a) of an intention to rely on the defense of mental illness or mental deficiency or when the defendant offers evidence at trial of mental illness or mental deficiency. Rule 20.01, subd. 8 provides for the admissability of statements made in the course of a court-ordered competency examination only at the proceedings to determine competency. Rule 20.02, subd. 5 provides that evidence derived from an examination to determine sanity is inadmissable unless the defendant has previously made his mental condition an issue; and Rule 20.02, subd. 6 provides a procedure for limited admissability of a defendant's statements made in the Rule 20 examination on the sanity issue.

■ The state argues appellant had made his mental condition an issue, thereby justifying use of his mental examination statements. We think not. Appellant had asserted an intoxication defense; and it is fairly evident from the transcript that his testimony was directed solely to refuting certain elements of the crimes with which he had been charged, not to advance a

---

1. Minn.Stat. § 609.185(1) and (3) (1990).

2. A third individual, Donald Genung, was arrested several days later.

defense of mental illness or mental deficiency. Furthermore, the state's expansive gloss would effectively eviscerate the carefully drawn procedures of Rule 20.02 for protecting of the privilege against self-incrimination.

■ In the alternative, the state argues that the statements were properly used for impeachment purposes. On its face, Rule 20 precludes the use of statements made by defendants in the course of the court-ordered mental examinations upon the issue of guilt. The rule reflects a clear intent that such statements will only be used on the issues of sanity or competence. In addition to securing the defendant's Fifth Amendment right against self-incrimination, it is rather obvious that a contrary rule would undercut the usefulness of the Rule 20 examination. The psychiatric inquiry into a defendant's competency cannot succeed unless the defendant cooperates; a defendant's true mental condition would not be discovered in many instances unless the psychiatrist can engage in a candid conversation with the defendant.

Here, the trial court ordered a mental examination but statements made in the course of that examination were used by the state for a much broader objective than was permitted by the rules. Where appellant neither asserted an insanity defense nor presented any psychiatric evidence, use of his statements made in a court-ordered mental examination was in clear violation of Rule 20 of the Minnesota Rules of Criminal Procedure.

Also at issue is the interrogation of appellant, in the absence of—and without notice to—his court-appointed public defender, at the time appellant's competency was in question. Both the federal[3] and state[4] constitutions guarantee anyone who is charged with a criminal offense the right to the assistance of counsel in his defense. We in Minnesota have jealously guarded this right, recognizing even before the United States Supreme Court did, a right to counsel even for so-called minor offenses. *State v. Borst*, 278 Minn. 388, 397, 154 N.W.2d 888, 894 (1967); *State v. Collins*, 278 Minn. 437, 437, 154 N.W.2d 688, 689 (1967); *State v. Illingworth*, 278 Minn. 434, 435, 154 N.W.2d 687, 688 (1967).[5] Certainly, as the state argues, the United States Supreme Court has said that a criminal defendant is free to waive his right to counsel, *Patterson v. Illinois*, 487 U.S. 285, 293, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261 (1988); *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986), but waiver is not the problem here.

■ Long ago we gave notice of our "strong[ ] disapprov[al]" of in-custody interrogations if the defendant is represented by counsel and counsel has not had an opportunity to be present at the questioning." *State v. Renfrew*, 280 Minn. 276, 280, 159 N.W.2d 111, 113 (1968). Subsequently, we have reiterated our disapproval of the practice "in the strongest of terms" in *State v. Fossen*, 312 Minn. 414, 255 N.W.2d 357, 362 (1977), and again in *Giddings v. State*, 290 N.W.2d 595, 597 n. 3 (Minn.1980), a case out of St. Louis County. Appellant says the state has not taken these admonishments seriously. Indeed, at argument, counsel for the state indicated that his office did not feel compelled to heed our views expressed in *Renfrew, Fossen,* or *Giddings*, characterizing what we wrote as mere dicta and not the law. It is incomprehensible that the attorney-client relationship in the context of a criminal proceeding would be so cavalierly disregarded.[6] As the highest court of this state, we are independently responsible for safeguarding the rights of our citizens. Accordingly, lest there be any doubt, in the exercise of our supervisory power to insure the fair administration of justice in this and future cases, we decide that in-custody in-

3. U.S. Const. amend. VI.

4. Minn. Const. art. I, § 6.

5. We have also established a right to counsel in civil contempt and paternity proceedings. *Cox v. Slama*, 355 N.W.2d 401, 403 (Minn.1984); *Hepfel v. Bashaw*, 279 N.W.2d 342, 348 (Minn. 1979).

6. We are also somewhat dismayed by state's counsel's belief that prosecutors are beyond the reach of our professional conduct rules, specifically Rule 4.2, Minn.R.Pro.Conduct. We note that the majority of jurisdictions presented with the issue have held that communicating with defendants who are represented by counsel violates the applicable rules of professional conduct. *See, e.g., United States v. Hammad,* 858

**802**

terrogation of a formally accused person who is represented by counsel should not proceed prior to notification of counsel or the presence of counsel.[7] Statements obtained without notice to or the presence of counsel are subject to exclusion at trial. We are mindful this requirement may cause some delay in the interrogation process; but the importance of the attorney-client relationship makes it necessary. This decision applies retroactively only to those cases pending on the date of the release of this opinion in which there has been a proper challenge in district court to the admission of statements obtained by police from a counseled defendant without notice to or the presence of counsel.

Of grave concern to us here is what we can only perceive as an emerging pattern of conduct, calculated to subvert the intent of our criminal rules which is to "provide for the just, speedy determination of criminal proceedings." Minn.Rule Crim.P. 1.02. In this case, the prosecution allowed the in-custody interrogation of appellant without notice to or the presence of appellant's court-appointed counsel and with full knowledge that a competency examination had been ordered, and later used statements appellant made in the course of that examination at trial in plain violation of Rule 20.[8] "We have on occasion warned the prosecution in our opinions that it has used improper tactics. However, these warnings appear to have been to no avail." *State v. Merrill,* 428 N.W.2d 361, 373

(Minn.1988). Justice is a process, not simply a result. Where the prosecution persists in skirting our rules and disregarding our admonitions, we are left with no option but to reverse. *Cf. State v. Gegen,* 275 Minn. 568, 569, 147 N.W.2d 925, 926 (1967).[9]

Reversed and remanded for a new trial.

KEITH, C.J., and COYNE, J., took no part in the consideration or decision of this case.

---

F.2d 834, 839–40 (2d Cir.1988), *cert. denied,* —— U.S. ——, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); *United States v. Foley,* 735 F.2d 45, 48 (2d Cir. 1984), *cert. denied,* 469 U.S. 1161, 105 S.Ct. 915, 83 L.Ed.2d 928 (1985); *United States v. Killian,* 639 F.2d 206, 210 (5th Cir.), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Sam Goody, Inc.,* 518 F.Supp. 1223, 1224 n. 3 (E.D.N.Y.1981); *State v. Ford,* 793 P.2d 397, 399–400 (Utah Ct.App.1990); *State v. Riley,* 216 N.J.Super. 383, 523 A.2d 1089, 1092 (App.Div.1987); *People v. Green,* 405 Mich. 273, 274 N.W.2d 448, 452–53 (1979); *People v. Hobson,* 39 N.Y.2d 479, 384 N.Y.S.2d 419, 348 N.E.2d 894, 898–99 (1976).

7. Even the United States Supreme Court has acknowledged states are free to adopt "different requirements for the conduct of its employees and officials as a matter of state law." *Moran,* 475 U.S. at 428, 106 S.Ct. at 1144.

8. Also, in *State v. Genung,* 481 N.W.2d 130 (Minn.Ct.App.1992), (pre-trial appeal) in the name of "conscientious advocacy," the prosecution violated the indictment process set out in Rule 8.01.

9. Given our disposition of the matter, we need not reach the merits of appellant's remaining issues, namely the admission of *Spriegl* evidence and the reasonableness of restraints. On retrial, however, should the issues be revisited, we strongly urge that the procedural safeguards for admission of *Spriegl* evidence, including that the decision on admissibility be deferred until after the state has presented its case, be closely followed. *State v. DeWald,* 464 N.W.2d 500 (Minn.1991). As for the use of restraints, factors that bear consideration on the issue are contained in *State v. Stewart,* 276 N.W.2d 51 (Minn.1979) and were observed by the trial court.