**Mary Ann FINNE, petitioner,
Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C6–01–2110.

Court of Appeals of Minnesota.

Aug. 6, 2002.

Bradford Colbert, Assistant State Public Defender, St. Paul, MN, for appellant.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Raymond F. Schmitz, Olmsted County Attorney, Rochester, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge, STONEBURNER, Judge, and FOLEY, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art VI, § 10.

## OPINION

R.A. RANDALL, Judge.

Appellant challenges the postconviction court's refusal to grant a new trial based on lack of counsel at trial and the trial court's refusal to suppress statements made in an interrogation following the appointment of a public defender. We find that appellant effectively waived trial counsel. However, the agents' continued interrogation of appellant when they knew she was represented by counsel is not consistent with appellant's constitutional right to fair representation of counsel. We affirm in part, reverse in part, and remand.

## FACTS

In early 1999, following a series of controlled buys, appellant was arrested and charged with conspiracy to commit a first-degree controlled-substance crime and aiding the commission of a first-degree controlled-substance crime

Following her arrest, appellant was transported from the Dakota County Jail to the Olmsted County Jail.[1] During this trip, BCA agent Susan Linkenmeyer questioned appellant regarding her involvement in the Olmsted County drug case. While being questioned, appellant requested an attorney and Linkenmeyer immediately ceased questioning.

Appellant appeared in court and a public defender was appointed to represent her. Approximately six days later, appellant, without contacting her court-appointed attorney, contacted agent Linkenmeyer for the purpose of setting up a conversation. Appellant wanted to do some informal plea bargaining on her own. On January 19,

1999, appellant was read her rights and was interviewed by Linkenmeyer and agent Jeffrey Hansen where she gave numerous statements later used at trial. Some of appellant's statements were offered to the two agents to trade information for leniency.

The matter was originally scheduled for trial on August 23, 1999. Before the proceedings began, appellant asked to dismiss her public defender and obtain private counsel. The district court allowed appellant to dismiss counsel with the instruction that she could not again obtain a public defender if she failed to acquire private counsel. Appellant was also instructed to notify the district court by August 26, 1999, as to the identity of her attorney. Appellant did nothing on August 26. The matter was then continued to a September 21, 1999, trial date.

On September 17, 1999, the trial court convened a pretrial hearing. At this hearing appellant represented that she had obtained private counsel. Appellant stated that her private counsel was not ready for trial on September 21, 1999, and that she did not know when he would be available. That same day the trial court contacted appellants' claimed private counsel. He stated he had never heard of appellant.

On September 21, 1999, the second trial date, appellant again appeared without counsel and repeated to the trial court that she had hired private counsel. The trial court had earlier that day[2] spoken to appellant's "private counsel." That attorney told the trial court that, yes, he had now been contacted, but he had earlier request-

---

1. Appellant was originally apprehended in Dakota County on the Olmsted County charges at issue.

2. The district court informed appellant:

   And I did indeed check with Mr. Kurzman, who did indicate that yesterday, so far as I could tell, for the first time he had actually spoken with you, Ms. Finne, and there had been a discussion about you hiring him, and that hasn't actually been accomplished yet with no money having changed hands. But it's possible I suppose that you could hire him.

ed a retainer from appellant, and despite appellant's statements that "her relatives had money," no one had actually come into his office on appellant's behalf and negotiated an up-front retainer. Thus, the attorney took the position that he still had not been retained as appellant's private counsel.

The trial court again continued the trial, now to the week of October 11, 1999, to enable appellant to continue to attempt to hire private counsel and to allow that counsel adequate time to prepare for trial. Simultaneously, the trial court appointed appellant's original public defender to serve as standby counsel. A representative from the public defender's office, who was present at the pretrial hearing, conveyed to the court that the public defender's office was willing to take over full representation if appellant so desired. Appellant made no statements that she so desired.

On October 18, 1999, the trial court convened a pretrial hearing. At that hearing the trial court informed appellant that the court intended to proceed with trial on October 19, 1999. The trial court again informed appellant that it had had numerous contacts with appellant's claimed private counsel. Private counsel had at that time conveyed to the court that as he had not been retained, he did not represent appellant. Appellant, responding to questions from the county attorney, indicated that she had not hired private counsel and still had not made a formal request for a public defender. When asked if that was her decision, appellant stated, "[n]o it's not my decision. The situation I'm in." The trial court ordered appellant to proceed pro se.

Between October 19 and October 27, 1999, appellant represented herself at trial. Following the trial, appellant was found guilty of both charges. Appellant subsequently petitioned for postconviction relief.

The postconviction court vacated appellant's conviction of aiding the commission of a controlled-substance crime in the first degree, but denied relief on all other claims. This appeal followed.

## ISSUES

1. Did the postconviction court err in finding that appellant validly waived her right to trial counsel?

2. Did the postconviction court err in denying appellant's motion for postconviction relief based upon the trial court's refusal to suppress appellant's statements to law enforcement after appellant had been given a court-appointed attorney?

## ANALYSIS

An appellate court's review of a postconviction proceeding is limited to ascertaining whether there is sufficient evidence to sustain the court's findings. *Hale v. State,* 566 N.W.2d 923, 926 (Minn.1997). An appellate court affords "great deference to a district court's findings of fact and will not reverse the findings unless they are clearly erroneous." *Dukes v. State,* 621 N.W.2d 246, 251 (Minn.2001) (citation omitted).

### I. Waiver of counsel

The Sixth and Fourteenth Amendments to the United States Constitution guarantee criminal defendants the right to an attorney. *Gideon v. Wainwright,* 372 U.S. 335, 343–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799 (1963). The U.S. Supreme Court has stated:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. * * * The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta v. California,* 422 U.S. 806, 819–820, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). This right to an attorney, however, may be waived if the waiver is competent and intelligent. *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Whether a waiver of a constitutional right is valid depends "upon the particular facts and circumstances surrounding that case, including the background experience, and conduct of the accused." *Id.* at 464, 58 S.Ct. at 1023. "It is the duty of the trial court to ensure a knowing and intelligent waiver of the right to counsel." *State v. Krejci,* 458 N.W.2d 407, 412 (Minn.1990). "A defendant's refusal, without good cause, to allow appointed counsel to continue representation may by itself be sufficient to find a valid waiver." *State v. Worthy,* 583 N.W.2d 270, 277 (Minn.1998) (citations omitted).

■ Appellant argues that the postconviction court erred when it found that appellant waived her right to counsel after appellant dismissed her public defender and failed to hire a private attorney. We disagree. Appellant, throughout the history of this case, had numerous chances to avail herself of representation, court appointed or private. Appellant was given at least two continuances to obtain private counsel. Despite these continuances, and appellant's assurances to the court that a privately retained attorney was ready, willing, and able to represent her, one never was. Respondent claims that appellant's refusal to accept a public defender, and her continued insistence to the district court that she was getting private counsel, was simply a ploy to stall her trial date. Their reasoning is that appellant knew as long as she had not been tried or had not pleaded guilty, she could not be called to testify at the trial of any alleged co-conspirator. Given appellant's sophistication and general knowledge of the legal system, we do not discount respondent's argument on this issue. The record is clear that

appellant was given numerous opportunities to avail herself of representation by a public defender. Beginning with the January 12, 1999, appointment of a public defender, through the September 21, 1999, appointment of standby counsel, and continuing to the eve of trial, public defense counsel indicated a willingness to represent appellant. The facts in this case mirror the situation in *State v. Brodie,* where the supreme court stated:

> This is not a case in which the record is silent on whether defendant knowingly and voluntarily waived his right to counsel. Defendant was in fact given counsel and he then "fired" counsel. The record is clear that defendant knew that he did not have a right to a different public defender but would have to represent himself if he did not accept the services of the public defender.

*State v. Brodie,* 532 N.W.2d 557, 557 (Minn.1995). Here, as in *Brodie,* appellant was given a public defender and then released that public defender, knowing full well that she would be expected to represent herself should she fail to hire private counsel. We conclude the postconviction court did not err in its finding of a valid waiver of trial counsel by appellant.

## II. Suppression

Appellant argues that the postconviction court erred in refusing to grant a new trial based upon the trial court's refusal to suppress statements taken during the custodial interrogation of January 19, 1999, which took place after a public defender had been appointed. We agree.

■ Both the United States and Minnesota constitutions guarantee that persons charged with a criminal offense shall have the right to assistance of counsel in their defense. U.S. Const. amend. VI; Minn. Const. art. I, § 6. It is settled that Minnesota strongly disapproves of in-

custody interrogations if the defendant is represented by counsel and counsel has not had the opportunity to be present at questioning. *State v. Renfrew,* 280 Minn. 276, 280, 159 N.W.2d 111, 113 (1968); *State v. Fossen,* 312 Minn. 414, 423, 255 N.W.2d 357, 362 (1977); *Giddings v. State,* 290 N.W.2d 595, 597 n. 3 (Minn.1980). The Minnesota Supreme Court in *State v. Lefthand* succinctly stated this disapproval:

> Of grave concern to us here is what we can only perceive as an emerging pattern of conduct, calculated to subvert the intent of our criminal rules which is to "provide for the just, speedy determination of criminal proceedings." * * * Justice is a process, not simply a result. Where the prosecution persists in skirting our rules and disregarding our admonitions, we are left with no option but to reverse.

*State v. Lefthand,* 488 N.W.2d 799, 802 (Minn.1992) (quotation omitted).

▇▇▇ To be suppressed, this court must examine the "egregiousness of the government's action in total." *State v. Ford,* 539 N.W.2d 214, 225 (Minn.1995). Here, we find the *Ford* decision and *State v. Miller,* 600 N.W.2d 457 (Minn.1999) instructive.

In *Ford,* a defendant, following the appointment of counsel, initiated contact with the police, waived his rights, and made numerous incriminating statement to officers. *Ford,* 539 N.W.2d at 223. While the defendant had been appointed counsel earlier that day, defense counsel was not notified of the interrogation. *Id.* The court, applying the *Lefthand* standard, concluded that because the prosecutors were not aware of the interrogation, and the defendant waived his rights, the government action did not consist of sufficiently egregious conduct to warrant a new trial. *Id.* at 223–24.

In *Miller,* a defendant who had not formally been charged with a crime, was questioned without counsel present. *Mil-*

*ler,* 600 N.W.2d at 461. This police interrogation was authorized by the prosecutor who, while the interview was taking place, spoke to defense counsel and instructed an officer to refuse to cease the interview and refuse to allow counsel to speak with his client. *Id.* at 461. The court concluded that the government's conduct, taken in the totality of the circumstances, and specifically the ethical violation of the prosecutor, was sufficiently egregious to implicate concerns about the fair administration of justice and to warrant suppression of the defendant's statements. *Id.* at 468.

▇▇▇ Appellant argues that governmental action in this instance was sufficiently egregious to warrant suppression, arguing that the officers, unlike in *Ford* and *Lefthand,* knew that appellant was represented by an attorney. The postconviction court relied heavily on the trial court's findings at the pretrial omnibus hearing, which stated, "[i]t is not clear from the record that either BCA agent involved in questioning Defendant knew that she was represented by an attorney." The postconviction court found that appellant had not proven by a fair preponderance of the evidence that the trial court was in error. We disagree.

Appellant's testimony at the omnibus hearing indicated it was common knowledge that the BCA agents knew she was represented by counsel. Her testimony is supported by statements made in both the transcript of the interrogation and in testimony at the omnibus hearing. In the transcript of the interrogation appellant mentions her lawyer at least twice during the conversation:

> Appellant: She knows that I've come up to talk to somebody, cuz you know I told her that my lawyer was supposed to be comin in (inaudible) tonight after I talked to you (inaudible).
>
> Agent Hansen: Oh, your lawyer?

* * *

Appellant: I–I first of all wanted to know, um (inaudible) and all of us (inaudible) you guys downtown (inaudible) anything. And uh (inaudible) I probably, honestly, I'm gonna talk to my lawyer.

Agent Linkenmeyer: (Inaudible)

Appellant: If I'm—if I'm—well if I'm looking at, um, getting—if I'm looking at-at facing something that I'm gonna be convicted of, I'm gonna be in violation of my probation, and I'm gonna do some time.

Agent Hansen corroborates the transcript testifying during the omnibus hearing that he and Agent Linkenmeyer had discussed who appellant's probation officer and her public defender were. At the omnibus hearing, Agent Hansen testified:

Q: Your report also goes on to state that there was a discussion between you and your colleague Agent Linkenmeyer about who my client's probation officer was and who her public defender was.

A: We asked Mary Finne that during the interview, yes.

Q: I'm sorry?

A: We asked Mary Finne those questions during the interview.

Q: And is your recollection same as mine? I don't see that in the transcript or didn't hear it in the tape.

A: That's correct.

Q: So that was done again at what time?

A: I believe that was done right away in the beginning of the interview and for some reason that tape may have not been recording at that time. As you can tell through the transcript, it started and stopped numerous times.

The state argues that because these statements were made within the "general topic" of a potential probation violation on another Olmsted County case, the agents believed the lawyer mentioned was involved in the previous case. We cannot conclude that the agent's inquiry into the status of appellant's probation on another matter and appellant's statements regarding "her attorney" have to be the same issue. We agree with the state's position that her references to "probation" most likely included her previous unrelated matter because, by definition, she was not on probation for this drug case at issue, as it had not even gone to trial yet. But that same deference to the state's argument cannot be given to appellant's statements to Linkenmeyer and Hansen regarding her attorney. At the time of this interrogation, appellant had had a court-appointed attorney on this case for a week. The agents knew she had been to court for at least an initial appearance on this case. During the January 19, 1999, interrogation of appellant, where she mentioned her attorney at least twice, on no occasion did either of the two agents try to clarify appellant's statements as to whether she was talking about her attorney from this case or some attorney on some other case. Further, the record is clear that one of the agents involved in the questioning of appellant, agent Linkenmeyer, was responsible for transporting appellant from the original apprehension site, Dakota County, to the Olmsted County Jail. During that transportation, agent Linkenmeyer immediately and properly ceased questioning appellant when appellant requested to speak to an attorney. We find it hard to believe that this same agent, speaking to appellant eleven days later, would believe that when appellant referenced her attorney she was speaking about some other totally unrelated matter, without at least clarifying the issue of "what attorney on what case."

## DECISION

1. The district court reached the proper conclusion that appellant had made a

valid waiver of her right to an attorney. On that issue, the district court is affirmed.

2. Taking the record as a whole, and recognizing the strong emphasis Minnesota puts on representation by an attorney, we conclude this issue is controlled by the sum of *Lefthand, Ford, and Miller.* Thus, the postconviction court erred when it held that appellant had not met her burden to show that the trial court should have excluded the January 19, 1999, statements from trial. We reverse on this issue, and remand for a new trial.

**Affirmed in part, reversed in part, and remanded.**