**KASSON STATE BANK, Respondent,**

v.

**Kenneth M. HAUGEN, Appellant.**

No. C9–87–571.

Court of Appeals of Minnesota.

Aug. 18, 1987.

Mark L. Torgrimson, Michaels, Seeger, Rosenblad & Arnold, Rochester, for respondent.

Peter C. Sandberg, Laurie J. Miller, Dunlap, Keith, Finseth, Berndt & Sandberg, P.A., Rochester, for appellant.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Kenneth Haugen appeals from a summary judgment and denial of a continuance in an action by the Kasson State Bank to recover on a promissory note. We reverse and remand for trial.

## FACTS

On October 12, 1984, appellant Kenneth Haugen signed a promissory note in favor of respondent Kasson State Bank which stated that it was in return for a loan of $12,500 at an interest rate of 14.5 percent, payable on April 10, 1985, and secured by stock in Image Electronics, Inc. (IE). On June 24, 1985, Haugen signed an extension agreement extending the due date to October 10, 1985. Haugen made only two interest payments. On November 24, 1986, the bank served Haugen with a summons and complaint alleging that Haugen had defaulted on the agreement and owed the bank $13,976 plus interest, costs, disbursements and reasonable attorney's fees.

Haugen replied to the bank's attorney by letter dated December 5, 1986, alleging that the bank president, along with his family and employees, were the major stockholders in IE and that, in order to raise capital for the ailing company, they had fraudulently induced him and several other IE employees to take out $12,500 loans to buy IE stock. He alleged that a bank officer and a financial consultant had made a presentation to the IE employees in which they had painted a favorable financial picture of IE and represented that the employees would not be personally liable because the loans would be secured by the stock. He further alleged that no stock was ever issued to him or any of the other employees. Although the bank admitted receiving this letter, it was never filed with the court. The bank subsequently filed only its summons and complaint.

On January 19, 1987, the bank served Haugen by mailing a notice of motion and motion for summary judgment. Attached was the attorney's affidavit stating that he had received a "reply" from Haugen, but did not know if he had filed "an appropriate Answer" and therefore did not know if he should move for a default or a summary judgment. No copy of Haugen's letter answer was attached to the affidavit.

At the summary judgment motion hearing on February 10, 1987, Haugen appeared pro se and testified under oath to the allegations he had made in his letter answer, specifically stating that at the bank's "presentation" the IE employees were told that IE was going to obtain a business loan to pay off the $12,500 loans and that they would not be personally liable for the loans because the stock would serve as the sole collateral. He added that all the employees at the meeting stated they were in no position to handle a $12,500 loan with a one-year payback and that two employees who purchased the stock had been forced into bankruptcy and two others had successfully challenged the loan obligation.

In answer to the court's question of whether he had answered the complaint, he replied that he had, but it wasn't in the file and he would like to submit a copy. The court said, "[w]ell, you would also have to pay the fee for it. I don't know what that is, the clerk would have to locate that." No more was said about it, and it never was filed.

Bank cashier Duane Swanson testified on direct examination that he was the loan officer handling these loans, made "as a result of a request for several of the employees, a number of them like Mr. Haugen had asked us * * * to make loans against the stock * * *." On cross-examination by Haugen, Swanson admitted he had made "a presentation to all of the employees of Image Electronics offering the loans to the employees," but denied he had represented to the employees that the stock would serve as sole collateral for the loans. He testified he had told the employees that they, as borrowers, must make up the difference beyond the value of the stock upon default.

After saying he had no further questions, Haugen attempted to add to his testimony, stating that the bank president and

his family members were major shareholders in IE and that the loan plan was a "fraudulent scheme" to protect their own investments. The court sustained the bank's objection, saying, "[t]hat's not a question, you're making a statement, Mr. Haugen, and that's not proper procedure."

Haugen then asked Swanson if it weren't a bit unusual to make $66–75,000 in loans to individuals with no investigation or security. The court sustained the bank's objection on the basis of "privileged information."

When the court asked whether Haugen had any further testimony, he began, "[o]nly that I was fraudulently, I believe, enticed into signing this note. I was told —." The court interrupted at that point, telling Haugen that he could bring a separate suit for fraudulent inducement, but that it was not before the court because "there has been no allegation of fraud in the inducement of signing this note."

At the end of the testimony, Haugen asked for a continuance. Still under oath, he testified that he had not learned of the summary judgment motion until the previous day because he had just returned from a three-week trip and that he had immediately called the bank's attorney to ask for a continuance so that he could retain an attorney, but was refused. He stated that he "would like to restate my motion for a continuance" so that he could get an attorney. The bank's attorney argued that Haugen had had ample time to contact an attorney since the personal service of the summons and complaint on November 24 and that a summary judgment wouldn't preclude Haugen from later bringing a suit for fraudulent representation. The court then denied Haugen's motion for a continuance, saying, "I think that is a motion that should have been submitted to the Court earlier." The court then granted summary judgment.

## ISSUES

1. Did the trial court err in granting summary judgment?

2. Did the trial court abuse its discretion in denying Haugen's motion for a continuance?

## DISCUSSION

### I

On appeal from a summary judgment it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Haugen contends the trial court erred in granting summary judgment because he raised a genuine issue of material fact in his defense of fraudulent inducement. The bank has not filed a brief.

Summary judgment is a "blunt instrument" and should not be employed to determine issues which suggest that questions be answered before the rights of the parties can be fairly passed upon. It should be employed only where it is perfectly clear that no issue of fact is involved, and that it is not desirable nor necessary to inquire into facts which might clarify the application of the law.

*Donnay v. Boulware*, 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966).

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. Oral testimony and concessions of counsel may also be considered. *Lundgren v. Eustermann*, 370 N.W.2d 877, 881, n. 1 (Minn.1985); *Itasca County Social Services v. Milatovich*, 381 N.W.2d 497, 499 (Minn.Ct.App.1986).

A review of the record shows that Haugen unequivocally raised the defense of fraudulent inducement in his letter answer; this should have been considered by the court. In an affidavit attached to its summary judgment motion, the bank admitted receiving Haugen's letter answer;

however, it chose not to attach a copy of it along with the other papers it filed with the court. At the hearing, when Haugen learned that the letter answer was not in the file, he expressed his desire to file it, but the court granted summary judgment before he was given an opportunity to do so.

The letter answer alone is not sufficient to withstand a summary judgment motion. *See* Minn.R.Civ.P. 56.05. However, Haugen's sworn testimony was that the bank solicited IE employees to borrow money for the purpose of infusion of capital into a corporation in which the bank president and other family members were major shareholders. Swanson, the bank's cashier, admitted making a "presentation" to all the employees offering the loans to them. Both Haugen and Swanson testified that the stock was meant to serve as collateral, but Swanson firmly denied that it was represented as being the sole collateral. Haugen testified that he was so informed, and this raises a genuine issue of material fact as to fraudulent inducement to make the contract. On these facts, we hold that the trial court erred in granting summary judgment.

██ The trial court abused its discretion in refusing to allow this pro se litigant a continuance so that he could hire a lawyer and prepare a defense. A trial court has a duty to ensure fairness to a pro se litigant by allowing reasonable accommodation so long as there is no prejudice to the adverse party. *Blair v. Maynard,* 324 S.E.2d 391, 395–96 (W.Va.1984); *see Liptak v. State ex rel. City of New Hope,* 340 N.W.2d 366, 367 (Minn.Ct.App.1983) (all courts provide some latitude and consideration to pro se litigants); *cf. Rice v. Perl,* 320 N.W.2d 407 412 (Minn.1982) (continuances for discovery should be liberally granted to diligent parties acting in good faith). Haugen's undisputed testimony was that he did not learn of the summary judgment motion until he returned from a three-week absence the day before the hearing. Under the circumstances, he acted diligently in immediately telephoning the plaintiff to ask for a continuance and in making the motion for a continuance in open court the next day.

## DECISION

Reversed and remanded for trial.