*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2198**

Robert L. Follis,
Appellant,

Georgia K. Follis,
Appellant,

vs.

State Armory Building Commission,
Respondent.

**Filed December 7, 2015
Affirmed
Halbrooks, Judge**

Todd County District Court
File No. 77-CV-13-848

Robert and Georgia Follis, Motley, Minnesota (pro se appellants)

Lori Swanson, Attorney General, Erik M. Johnson, Assistant Attorney General, St. Paul,
Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and
Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellants, pro se, challenge the district court's grant of partial summary
judgment to respondent. Appellants argue that the district court erred by not giving them

an opportunity to present evidence of their damages and that the district court did not treat appellants appropriately as pro se litigants. We affirm.

**FACTS**

In 2002, appellant Robert Follis entered into a contract for deed with the state to purchase a former Minnesota Army National Guard armory building. The contract required Follis to make a down payment of $5,000 and five annual payments of $8,900 plus interest. The contract also required Follis to pay all property taxes. Follis provided the down payment, but he failed to make the annual payments due in 2003, 2004, and 2005. He also failed to pay the property taxes. Because of Follis's default, the state served him with a notice of cancellation on March 22, 2006. The notice advised Follis that if he did not pay the amount due or secure a court order suspending termination, the contract for deed would be terminated.

Follis responded to the notice of cancellation by filing a petition to enjoin the termination of the contract for deed on May 22, 2006. The district court denied Follis's petition, and Follis appealed. On December 11, 2007, this court affirmed the district court's denial of Follis's petition.

In early 2008, the state brought an eviction action against Follis. The district court entered a judgment of eviction in March 2008. Follis appealed the eviction judgment to this court, and his appeal was dismissed as untimely on May 13, 2008.

On May 16, 2008, appellants Robert and Georgia Follis filed a federal lawsuit against the state seeking to prevent the state from evicting them from the armory. The federal district court ruled against the Follises on September 4, 2008. The Follises

2

appealed, and the Eighth Circuit Court of Appeals affirmed the federal district court on June 24, 2009.

Although they did not prevail in any of their lawsuits, the Follises were successful in delaying their eviction from the armory for more than three years. The Follises were finally evicted from the armory on July 16, 2009. Over the next 60 days, the Follises were given access to the armory to remove their personal property. The State Quartermaster for the Minnesota National Guard unlocked the armory for the Follises each day that they wanted to remove their property. In his affidavit, the quartermaster noted the unsanitary conditions he witnessed in the armory. According to the quartermaster, "Large amounts of animal feces were located throughout the whole complex. . . . The smell of musty, rotting food and animal urine was so strong it was difficult to stay in the building for any length of time." He also stated that he "never saw anything in the armory that appeared to have any resale value." The Follises hauled away approximately 30 truckloads of personal property from the armory during the 60-day period. After the 60 days, the Follises still had property remaining in the armory but were not allowed to access it.

The Follises filed the complaint in this case in 2013, alleging that respondent State Armory Building Commission (SABC) unlawfully denied them access to their property that was still left in the armory. The Follises sought $3,000,000 in damages and $250,000 in "punitive damages for pain and suffering."

The SABC served the Follises with interrogatories that asked them, among other questions, to "identify any evidence that supports the amount of your claimed damages."

3

The Follises never responded to the interrogatories. The SABC also served the Follises with a request for production of documents. Among the requested documents were "[a]ll documents that support any allegation by you that you are entitled to recover any amount of damages in this lawsuit" and "[a]ll documents that support any allegation by you as to the value of the personal property that you allege you have been deprived of." The Follises never responded to the request for production of documents.

The SABC moved for summary judgment. The Follises did not respond to the motion before the summary-judgment hearing. At the summary-judgment hearing, the Follises requested time to respond to the motion in writing, and the district court gave them two weeks to file a written argument. The Follises subsequently filed a memorandum in opposition to summary judgment. In their memorandum, they made general assertions but still did not offer any evidence regarding the value of their property in the armory.

The district court granted the SABC's motion for summary judgment in part and denied it in part. The district court concluded that since the Follises had not offered any evidence concerning the value of their property remaining in the armory, they could not survive summary judgment on their claim for actual damages under Minn. Stat. § 504B.231 (2014) because damages were an essential element of that claim. But the district court ruled that the SABC was not entitled to summary judgment on the claim for the statutory penalty of $500 under section 504B.231 because the Follises did not need to prove actual damages in order to recover $500 under the statute. Because the SABC never denied the allegation that it had not completed an inventory of the Follises'

property required by Minn. Stat. § 504B.365, subd. 3(d) (2014), the district court concluded that there was a genuine issue of material fact about the inventory requirement.

At a pretrial hearing, the SABC stipulated that it had not completed the required inventory of the Follises' property left in the armory. Because the SABC violated the statute, the district court entered judgment in favor of the Follises for the statutory penalty of $500. The Follises now appeal the summary-judgment dismissal of their claim for actual damages.

## D E C I S I O N

### I.

The Follises argue that the district court erred by granting partial summary judgment in favor of the SABC on the issue of actual damages. On appeal from summary judgment, we review de novo whether a genuine issue of material fact exists and whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id.* Summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03.

### A. Genuine Issue of Material Fact

"The party opposing summary judgment may not establish genuine issues of material fact by relying upon unverified and conclusory allegations, or postulated

5

evidence that might be developed at trial, or metaphysical doubt about the facts." *Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 783 (Minn. 2004). "[W]hen the nonmoving party bears the burden of proof on an element essential to the nonmoving party's case, the nonmoving party must make a showing sufficient to establish that essential element." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

The Follises offered no evidence of their actual damages other than conclusory allegations in their complaint and memorandum opposing summary judgment. They failed to answer any interrogatories about their damages. They did not respond to the request for production of documents. They did not offer evidence to rebut the quartermaster's claims about the unsanitary conditions of the armory, and they offered no evidence to contradict his statement that nothing in the armory had any resale value. The Follises had the burden of proof on the element of their damages. Since they offered no evidence to show that their property remaining in the armory had any value, they did not make a showing sufficient to establish that element.

Without citing to the record or any legal authority, the Follises argue that the district court erred by not giving them "an opportunity to present the true value of the property to the court." The Follises actually had multiple opportunities to present evidence of the value of their property. They could have done so if they had answered the SABC's interrogatories; they could have done so if they had responded to the request for production of documents; and they could have done so in responding to the motion for summary judgment. The district court was correct to conclude that there was no genuine issue of material fact regarding the value of the Follises' property.

6

**B.      Application of the Law**

Minn. Stat. § 504B.365 (2014) governs eviction procedures.  Because the Follises' property remained in the armory after they were evicted, the relevant part of the statute provides:

> If the defendant's personal property is to be stored on the premises, the officer shall enter the premises, breaking in if necessary, and the plaintiff may remove the defendant's personal property.  Section 504B.271 applies to personal property removed under this paragraph.  The plaintiff must prepare an inventory and mail a copy of the inventory to the defendant's last known address or, if the defendant has provided a different address, to the address provided.

Minn. Stat. § 504B.365, subd. 3(d).

Minn. Stat. § 504B.271 (2014) refers to a tenant's personal property remaining in the premises.  "If a tenant abandons rented premises, the landlord may take possession of the tenant's personal property remaining on the premises, and shall store and care for the property."  Minn. Stat. § 504B.271, subd. 1(a).  "The landlord may sell or otherwise dispose of the property 28 days after the landlord receives actual notice of the abandonment, or 28 days after it reasonably appears to the landlord that the tenant has abandoned the premises, whichever occurs last."  *Id.*, subd. 1(b).  In 2009, when the Follises were evicted, the period of time under this statute was 60 days.  *Id.*, subd. 1 (2008).  This section applies to contract-for-deed cancellations.  *Id.*, subd. 4 (2014).

Abandoned property traditionally means property that is voluntarily surrendered. *Black's Law Dictionary* 1411 (10th ed. 2014).  The district court concluded that abandoned property under section 504B.271 does not have its traditional meaning.  The

7

district court reasoned that property left behind after an eviction is considered abandoned under the statute because the word abandonment refers to "an event, the occasion when departure from the premises actually occurs." We agree with the district court's interpretation of section 504B.271. Section 504B.271 is incorporated into section 504B.365, which deals with eviction procedures. A tenant surrenders the premises involuntarily when evicted. If the term abandon in the statute had its traditional meaning, a landlord could not dispose of an evicted tenant's property left in the premises because the tenant would not have voluntarily surrendered the premises. Such an interpretation would improperly render a section of the Minnesota Statutes superfluous. *See Allan v. R.D. Offutt Co.*, 869 N.W.2d 31, 33 (Minn. 2015). The SABC was therefore free to dispose of the Follises' property 60 days after they were evicted. The district court properly applied the law when it ruled that the SABC had complied with section 504B.271 by allowing the Follises 60 days to access their remaining property in the armory after they had been evicted.

A landlord who removes a tenant's property in violation of section 504B.365 is guilty of an unlawful ouster under section 504B.231. Minn. Stat. § 504B.365, subd. 5. Because the SABC did not complete an inventory of the Follises' property required by section 504B.365, subdivision 3(d), the SABC violated section 504B.365 and was therefore guilty of an unlawful ouster under section 504B.231.

Minn. Stat. § 504B.231 addresses what damages a tenant may recover for an unlawful ouster. The tenant may recover treble damages or $500, whichever is greater. Minn. Stat. § 504B.231(a). Because there is no genuine issue of material fact concerning

8

the Follises' actual damages, their only remedy is the $500 statutory penalty. The district court did not err in applying the law. Summary judgment was appropriate.

## II.

The Follises allege that the district court did not treat them appropriately as pro se litigants. Without citing any legal authority, the Follises contend that the district court should have "assisted" them with their case. The Follises' contention is wrong. District courts have "a duty to ensure fairness to a pro se litigant by allowing reasonable accommodation so long as there is no prejudice to the adverse party." *Kasson State Bank v. Haugen*, 410 N.W.2d 392, 395 (Minn. App. 1987). Although courts may make some accommodation to ensure fairness to a pro se party, "this court has repeatedly emphasized that pro se litigants are generally held to the same standards as attorneys and must comply with court rules." *Fizgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001).

The record here demonstrates that the district court properly accommodated the Follises. The Follises appeared at the summary-judgment hearing without filing any response to the summary-judgment motion. They asked the district court for time to respond in writing to the motion, and the district court gave them two weeks. Transcripts of the hearings demonstrate that the district court was extremely patient with the Follises and gave them ample opportunity to be heard. This claim is without merit.

**Affirmed.**