*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0560**

State of Minnesota,
Respondent,

vs.

Nicholas Lee Hill,
Appellant.

**Filed February 9, 2026**
**Affirmed in part, reversed in part, and remanded**
**Johnson, Judge**
**Concurring in part, dissenting in part, Reyes, Judge**

Hennepin County District Court
File No. 27-CR-20-11630

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Robert I. Yount, Adam E. Petras, Assistant County Attorneys, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Adam Lozeau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

A Hennepin County judge found Nicholas Lee Hill guilty of attempted first-degree criminal sexual conduct after determining that the state had proved the elements of the

offense and that Hill had not proved the defense of mental illness. We conclude that Hill has not established that the district court engaged in an independent investigation of facts outside the record when reconsidering its earlier denial of Hill's pre-trial motion to suppress evidence. We also conclude that the district court erred when making findings of fact concerning the first phase of trial by considering statements Hill made during a mental examination conducted pursuant to rule 20.02 of the rules of criminal procedure. We further conclude that Hill is not entitled to relief for any of the reasons asserted in his *pro se* supplemental brief. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

The incident that gives rise to this appeal has been thoroughly described in two prior appellate opinions and need not be repeated here. *See State v. Hill*, 23 N.W.3d 824, 826-27 (Minn. 2025) (*Hill II*); *State v. Hill*, 10 N.W.3d 317, 319-20 (Minn. App. 2024) (*Hill I*), *rev'd*, 23 N.W.3d 824 (Minn. 2025). The facts relevant to the issues presently before the court, which are primarily procedural in nature, were not described in the prior appellate opinions and are described below, both in this section and in our discussion of the parties' respective arguments. The procedural history is complicated by multiple factors, including the fact that the district court conducted hearings on suppression issues after the commencement of trial and began the second phase of trial without having made findings of fact and conclusions of law with respect to the first phase.

**Charges**

In May 2020, the state charged Hill with attempted first-degree criminal sexual conduct while armed with a dangerous weapon, in violation of Minn. Stat. § 609.17, subd. 1 (2018), and Minn. Stat. § 609.342, subd. 1(d) (2018). The state later amended the complaint by adding a charge of attempted first-degree criminal sexual conduct while using force or coercion to cause personal injury, in violation of Minn. Stat. § 609.17, subd. 1 (2018), and Minn. Stat. § 609.342, subd. 1(e)(i) (Supp. 2019).

**Pre-Trial Proceedings**

In July 2020, while represented by a public defender, Hill moved to suppress evidence of statements he made to an investigating officer two days after the incident. Hill argued that he lacked the ability to knowingly waive his right against self-incrimination or his right to the assistance of counsel because of "cognitive limitations" and because he "was not in a coherent state of mind." In September 2020, the district court denied the motion. Based in part on its review of an audiorecording of the interview, the district court determined that Hill was competent to waive his *Miranda* rights.

In April 2021, the district court ordered a mental examination of Hill pursuant to rule 20.02 for the purpose of determining his mental state at the time of the incident. The rule 20.02 examination was conducted by Elizabeth J. Barbo, Ph.D., L.P., who submitted an 11-page report in June 2021. In her written report, Dr. Barbo determined that Hill understood the nature of his actions and understood that his actions were wrong. Accordingly, Dr. Barbo opined that Hill "was not laboring under a defect of reason, due to mental illness or cognitive impairment that would have prevented him from knowing the

3

nature of the act constituting the offense, or that the act was wrong, and therefore he does not qualify for a *M'Naghten* defense."[1]

In October 2021, Hill waived his right to counsel and chose to represent himself. At a hearing in March 2022, Hill requested public funds to retain an expert witness who might provide evidence relevant to whether his statements to the investigating officer were unreliable on the ground that he was taking a particular prescription medication. Hill also requested public funds for a second rule 20.02 examination so that he might develop evidence relevant to his mental-illness defense. In addition, Hill asked the district court to reconsider its September 2020 denial of his motion to suppress evidence of the statements he made to the investigating officer. The district court granted Hill's request for expert-witness fees, conditioned on Hill's identification of the proposed expert and documentation that he was taking the prescription medication at the time of the incident. The district court reserved ruling on Hill's request for a second rule 20.02 examination and provisionally denied Hill's request for reconsideration of his motion to suppress evidence.

In May 2022, the district court authorized the expenditure of funds for Scott A. Fischer, Ph.D. to conduct a second rule 20.02 examination. In August 2022, Dr. Fischer submitted a six-page report, which indicates that he reviewed a videorecording (not an

---

[1]Under Minnesota law, a person with a mental illness or cognitive impairment may be "excused from criminal liability" if "at the time of committing the alleged criminal act the person was laboring under such a defect of reason . . . as not to know the nature of the act, or that it was wrong." Minn. Stat. § 611.026 (2018). The defense is known as the *M'Naghten* defense because it follows the rule of a historic English case. *See State v. Roberts*, 876 N.W.2d 863, 867 (Minn. 2016) (citing *M'Naghten's Case* (1843) 8 Eng. Rep. 718, 722, 10 Cl. & Fin. 200, 210).

audiorecording) of the investigating officer's interview of Hill. Dr. Fischer determined that Hill "was experiencing symptoms of a psychotic disorder at the time of his alleged offense." Nonetheless, Dr. Fischer agreed with Dr. Barbo that Hill "does not meet criteria for a *M'Naghten* defense" and opined that "available information does not suggest a level of impairment so severe that he would not have understood that what he was doing or that committing sexual assault would be wrong."

**Reconsideration of Motion to Suppress Evidence, First Segment**

On August 15, 2022, the district court conducted an evidentiary hearing on Hill's request for reconsideration of his motion to suppress evidence. Dr. Fischer and Dr. Barbo testified, but Hill did not complete his direct examination of Dr. Barbo before the district court adjourned the hearing at 5:39 p.m.

At a scheduling hearing two days later, Hill asserted that Dr. Barbo had access to a videorecording of the investigating officer's interview of him before she completed her written report. The district court stated that Hill was free to examine Dr. Barbo about that issue. After further discussion, the district court noted that it did not have the videorecording when it ruled on Hill's suppression motion in September 2020. In discussing the remainder of the evidentiary hearing, the district court commented, "I assume somebody's going to offer me that video," but that if neither party did so, the evidentiary record would consist of the two experts' written reports. Later in the hearing, the district court stated that it would consider the two written reports, "along with the video itself if somebody offers it," before ruling on the suppression issue.

The case was set for trial on Wednesday, September 7, 2022. When the parties appeared on that date, Hill requested that the district court resume the evidentiary hearing on his suppression motion so that he could complete his examination of Dr. Barbo. Hill completed his direct examination, the prosecutor conducted cross-examination, and Hill conducted re-direct examination. Hill said that he wished to examine another witness, who was not in the courtroom. The district court stated its intention to begin the trial after lunch and told Hill that, if he was able to arrange the appearance of the absent witness, "we'll take a break in the proceedings and have that testimony" for purposes of the suppression issue.

Hill waived his right to a trial by jury. The prosecutor said that the state's first witness in the first phase of trial would be the alleged victim, C.L., who was not then at the courthouse. The prosecutor expressed his intention to contact her to arrange for her testimony after lunch.

When the district court called the matter for trial after lunch, the prosecutor stated that C.L. was unavailable that afternoon because she was scheduled to be out of town on a pre-planned vacation, which involved air travel, through the remainder of the week. The prosecutor stated that he could call other first-phase witnesses the following morning. The district court stated that it would receive testimony from the state's first-phase witnesses and then adjourn until Tuesday, September 13, 2022, when the state could call C.L. The district court asked the prosecutor whom the state would call in the second phase of trial, and the prosecutor said he would call only Dr. Barbo. The district court stated that it would "take this all out of order" and would receive Dr. Barbo's testimony relevant to Hill's

6

mental-illness defense on Monday, September 12, 2022.  The prosecutor expressed concern that if the district court "hasn't reached a verdict on the guilt phase, to start taking testimony on the affirmative defense of not guilty by mental illness would be looked upon poorly and possibly result in reversal, which we want to avoid at all costs."  The district court noted the objection but did not alter its plan.  Hill did not object.

**First Phase of Trial, First Segment**

The prosecutor gave an oral opening statement.  Hill reserved his opening statement.  The district court adjourned for the day.

**Reconsideration of Motion to Suppress Evidence, Second Segment**

On the following morning, Thursday, September 8, 2022, Hill called as a witness a psychiatric physician assistant for purposes of his suppression motion.  There was no objection, the district court granted the request, and the witness testified.  Hill testified in support of his suppression motion.  The district court orally denied the suppression motion.

**First Phase of Trial, Second Segment**

The state then called its first witness in the first phase of trial, a former co-worker of C.L.  During a break in that witness's testimony, Hill stated that he wanted to reopen the record of the suppression issue the following week, when he hoped to procure the testimony of the investigating officer who interviewed him two days after the incident.  The district court reserved ruling on the request.  In discussing the relevance of the then-former officer's testimony, the district court stated, "I'll note for the record that in making my ruling denying the motion for reconsideration of my earlier ruling denying the motion to

7

suppress, that part of my factual basis was watching the video, listening to the video, reading the transcript of the video, and forming my own impression."

After trial resumed, the state offered the videorecording during the testimony of a police officer. The exhibit was received without objection. The hour-long videorecording includes the 20-minute interview as well as time before and after the interview in which Hill is alone and talking to himself, but the prosecutor published only the 20-minute interview while in the courtroom. After three of the state's witnesses had completed their testimony, the district court adjourned for the day.

**Reconsideration of Motion to Suppress Evidence, Third Segment**

The parties appeared again on the afternoon of Tuesday, September 13, 2022. Consistent with Hill's request on Thursday, September 8, 2022, the district court reopened the record of the suppression motion. Hill called the former officer who had interviewed him two days after the incident. At the conclusion of the former officer's testimony, the district court announced the conclusion of the reopened hearing on the suppression issue and asked the state to call its next trial witness.

**First Phase of Trial, Third Segment**

The state called C.L. At the conclusion of her testimony, the state rested. Hill waived his opening statement and rested. After further discussion, the district court stated: "I'm not going to reach a verdict . . . one way or another today. I'm not going to do that . . . until I receive the briefing on both of the issues, both the underlying case and the not guilty by reason of mental illness case." Neither party objected at that time.

8

**Second Phase of Trial**

The district court asked the parties about their plans for presenting evidence in the second phase of trial. Hill stated his intention to call Dr. Fischer and one other witness. When the district court asked about the timing of Dr. Fischer's testimony, Hill stated that he was in the hallway. In response, the district court stated, "Oh, well, let's do that then."

Dr. Fischer was sworn and testified. The parties agreed that Dr. Fischer's testimony in the suppression hearing and his written report would be incorporated into the evidentiary record of the second phase of trial and that the parties could ask additional questions. Hill waived his right to testify in the second phase of trial. The district court adjourned for the day at approximately 4:30 p.m.

The second phase of trial resumed two days later, on Thursday, September 15, 2022. Hill rested. The state called Dr. Barbo. The district court accepted Dr. Barbo's written report and prior testimony from the suppression hearing as part of the evidentiary record of the second phase of trial and allowed the parties to ask additional questions. The state rested. The district court requested that the parties submit written closing arguments addressing the issues in both the first and second phases of trial.

**Findings of Fact and Conclusions of Law**

In October 2022, the district court filed a 17-page order in which it found that the state had *not* proved the elements of the first charged offense (attempted first-degree criminal sexual conduct while armed with a dangerous weapon), that the state *had* proved the elements of the second charged offense (attempted first-degree criminal sexual conduct

9

while using force or coercion to cause personal injury), and that Hill had not proved his mental-illness defense.

**Post-Trial Motions and Sentencing**

In December 2022, Hill filed two post-trial motions in which he made numerous requests for a new trial or dismissal. In January 2023, the district court filed a 20-page order denying Hill's request for a new trial and a 15-page order denying Hill's request for a dismissal on speedy-trial grounds. The district court imposed a sentence of 180 months of imprisonment.

**Appeal**

Hill timely filed a notice of appeal. His appellate attorney made three arguments on his behalf. This court granted relief on Hill's first argument and reversed his conviction, concluding that the state failed to "present evidence independent of Hill's confession that reasonably tends to prove that he intended to commit the underlying crime of first-degree criminal sexual conduct." *Hill I*, 10 N.W.3d at 327-28. Because we reversed outright for insufficient evidence, we did not consider Hill's other arguments. *Id.* at 321.

The supreme court granted further review and, after briefing and oral arguments, reversed this court's opinion on the ground that "the State satisfied its burden of establishing the corpus delicti for attempted first-degree criminal sexual conduct, as required by section 634.03" of the Minnesota Statutes. *Hill II*, 23 N.W.3d at 837. The supreme court remanded the appeal to this court for consideration and resolution of Hill's remaining appellate arguments. *Id.*

10

This court reinstated the appeal and requested supplemental briefs, which have been filed. We now consider and resolve the two other issues raised by Hill's appellate attorney as well as the issues raised by Hill in a *pro se* supplemental brief.

## DECISION

### I. Motion to Suppress

Hill argues that, when reconsidering his motion to suppress evidence, the district court erred by "independently obtaining, examining, and relying on evidence that was not offered or received in evidence in order to deny Hill's motion to suppress." The evidence to which Hill refers is the videorecording of the investigating officer's interview of him two days after the incident.

A criminal defendant has a constitutional right to due process, which includes the right to an impartial judge. *State v. Duol*, 25 N.W.3d 135, 141 (Minn. 2025) (citing U.S. Const. amend. XIV and Minn. Const. art. I, § 7). This right "requires that conclusions reached by the trier of fact be based upon the facts in evidence . . . and prohibits the trier of fact from reaching conclusions based on evidence sought or obtained beyond that adduced in court." *State v. Dorsey*, 701 N.W.2d 238, 249-50 (Minn. 2005). Accordingly, the supreme court has adopted a "bright-line rule that prohibits the trier of fact from conducting deliberate independent investigations of extra-record facts and then considering those facts." *Duol*, 25 N.W.3d at 142 (quotations omitted). This rule applies at all stages of a criminal case. *Id.* at 142-43. A violation of this right is a structural error, which requires reversal without regard to whether an appellant can establish prejudice. *Dorsey*, 701 N.W.2d at 253.

11

Notwithstanding the foregoing, the supreme court has stated, "Although a trier of fact has a duty to decide the case based on the evidence presented at trial, not all violations of that duty transform an impartial trier of fact into a partial trier of fact." *State v. Lopez*, 988 N.W.2d 107, 117-18 (Minn. 2023). In *Lopez*, the supreme court distinguished *Dorsey* on two grounds: first, that the judge in *Lopez* "did not 'openly question' the veracity of Lopez's factual assertions during his testimony" and, second, that "the record does not support a reasonable inference that the court conducted an independent investigation." *Id.* at 120-21.

To determine whether the district court in this case was partial or impartial, we begin with the fact that the district court granted Hill's request for reconsideration of its earlier denial of Hill's motion to suppress evidence. The district court also granted Hill's request for expert-witness fees, which allowed Hill to retain Dr. Fischer, who prepared a written report, which Hill offered during the reopened suppression hearing. Dr. Fischer's report states that he reviewed a videorecording of the investigating officer's interview of Hill, which factored into his opinion that Hill "was experiencing symptoms of a psychotic disorder at the time of his alleged offense." At the reopened suppression hearing, Dr. Fischer testified that he believed that Dr. Barbo, with whom he disagreed in part, had not reviewed the videorecording. When Dr. Barbo testified at the evidentiary hearing, Hill questioned her about the videorecording. Thus, the videorecording was an important part of Hill's request for reconsideration. The district court could not fully reconsider the suppression issue without viewing the videorecording.

12

Hill's argument is based on the premise that the district court "independently obtain[ed]" the videorecording. In *Dorsey*, it was undisputed that the district court had "independently investigated a fact not introduced into evidence." 701 N.W.2d at 250. Indeed, the district court in *Dorsey* fully disclosed the nature, scope, and results of its independent investigation on the record. *Id.* at 243-44. In this case, however, there is no record of an independent investigation and no indication in the record that the district court took the initiative of seeking out the videorecording. Hill asserts, "The only apparent explanation is that the judge somehow independently obtained a copy of the video . . . ." Hill's use of the word "somehow" confirms that the manner in which the district court obtained the videorecording is unknown. It is possible that the district court did not actively seek out the videorecording but, rather, was the passive recipient of it. The record reflects only that the videorecording was offered by the state and admitted as an exhibit in the first phase of trial. This is not a case in which a district court's deliberate and independent conduct is the only reasonable explanation of how the district court came into possession of evidence that was not offered by a party. *Cf. Duol*, 25 N.W.3d at 142 (noting state's concession that, given "amount and specificity" of "extra-record material included in the district court's order, it logically follows that the district court inquired into this information"). Rather, this case is like *Lopez* in that "the record does not support a reasonable inference that the court conducted an independent investigation." 988 N.W.2d at 120.

In addition, it is notable that the district court's investigation in *Dorsey* sought and yielded information that was not previously known to the parties. *Dorsey*, 701 N.W.2d at

13

243-44. In this case, however, the videorecording was well known to and was possessed by both parties. In addition, the videorecording had been reviewed by two expert witnesses, who testified about the videorecording during the suppression hearing. When the district court noted that neither party had yet formally offered the videorecording, neither party raised any concerns about its admissibility. In his post-hearing memorandum, Hill referred to the videorecording.

Furthermore, the district court's review of the videorecording could be construed as an accommodation for a self-represented litigant who struggled to deal with the difficulties of trial. It often is said that "pro se litigants are generally held to the same standards as attorneys and must comply with court rules." *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001). But it also is true that "some latitude and consideration is provided by all courts to" *pro se* litigants. *Liptak v. State ex rel. City of New Hope*, 340 N.W.2d 366, 367 (Minn. App. 1983). This court has held that a district court may commit error if it does not fulfill its "duty to ensure fairness to a pro se litigant by allowing reasonable accommodation so long as there is no prejudice to the adverse party." *Kasson State Bank v. Haugen*, 410 N.W.2d 392, 395 (Minn. App. 1987). We recently applied that principle in concluding that a district court erred by not assisting a self-represented litigant who had prepared exhibits, submitted them to the court in advance, and used them during an evidentiary hearing but never formally offered them. *Jackson v. Daniel*, No. A20-1366, 2021 WL 4259151, *3 (Minn. App. Sept. 20, 2021). In this case, the district court avoided that pitfall by ensuring that the evidence on which Hill intended to rely in the reopened

14

suppression hearing actually was considered by the court, even though neither party formally offered it.

We generally presume that "a judge has discharged his or her judicial duties properly." *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998). Hill has not rebutted that presumption. Thus, based on our review of the entire record and the unique circumstances of this case, we conclude that Hill has not established that the district court erred by conducting an independent investigation into the videorecording for the purpose of Hill's motion to suppress evidence.

## II. Trial

Hill also argues that the district court erred by not complying with rule 20.02 during the court trial. Specifically, Hill contends that the district court erred in two "interlinked" ways: first, by "holding the mental-illness stage of the trial before deciding whether Hill was guilty of the offense" and, second, by "using statements Hill made during a rule 20 exam to find him guilty."

If a defendant has asserted a mental-illness defense, the district court may order a mental examination. Minn. R. Crim. P. 20.02, subd. 1. If the defendant relies on both a mental-illness defense and a defense of not guilty, "the court must separate the two defenses." Minn. R. Crim. P. 20.02, subd. 7(a). Specifically, "[t]he defense of not guilty must be heard and determined first," and "[t]he defense of mental illness or cognitive impairment must be heard and determined second." *Id.*; *see also* Minn. R. Crim. P. 20.02, subd. 7(c). In addition, "the statements the defendant made for the purpose of the mental examination and any evidence derived from the statements are admissible against the

15

defendant *only at the mental illness or cognitive impairment stage of the trial*." Minn. R. Crim. P. 20.02, subd. 6(2) (emphasis added).

We consider the second part of Hill's argument before the first part.

## A.    Consideration of Rule 20.02 Examination

### 1.    *Whether District Court Erred*

As stated above, Hill contends that the district court erred by "using statements Hill made during a rule 20 exam to find him guilty." The parties agree that Dr. Barbo's testimony concerning statements Hill made during her rule 20 examination was admitted in the second phase of trial, which was concerned only with Hill's mental-illness defense, but was not admitted in the first phase, which was concerned with whether the state had proved the elements of the charged offenses.

Nonetheless, in its October 2022 post-trial order, the district court relied on Dr. Barbo's testimony in making findings of fact relevant to Hill's not-guilty defense. The district court found that Hill intended to commit sexual penetration without C.L.'s consent. In making that finding, the district court relied primarily on the confession Hill made during the investigating officer's interview of him two days after the incident. In addition, the district court explained its finding as follows:

> It is also telling that Defendant changed his story of what happened during the apartment tour in his description of the events to Dr. Barbo—over a year after the incident and after he had been charged. Defendant admitted to Dr. Barbo that he "pulled a knife" on C.L. and knocked her to the ground, but he denied any sexual intent in his actions. He also said he initially went to the apartment complex to look at an apartment for his father. He further claimed that it was C.L. who first acted aggressively toward him. This story does not align with C.L.'s

16

credible testimony, nor Defendant's original admissions to police. Defendant's attempts to reframe the story as an accidental physical assault on an "aggressive" C.L. tends to further show Defendant's consciousness of guilt.

It is obvious that the statements referenced in this finding are statements that Hill made to Dr. Barbo during her rule 20.02 examination. But those statements, as well as "any evidence derived from the statements," are inadmissible in the first phase of trial. *See* Minn. R. Crim. P. 20.02, subd. 6(2). By expressly relying on evidence of statements Hill made to Dr. Barbo during her rule 20.02 examination to make findings of fact on Hill's not-guilty defense, the district court violated rule 20.02 and the caselaw interpreting that rule. *See State v. Lefthand*, 488 N.W.2d 799, 800-02 (Minn. 1992); *State v. Villalobos*, 613 N.W.2d 766, 769-70 (Minn. App. 2000), *rev. denied* (Minn. Sept. 13, 2000).

### 2. *Whether Error is Reversible Error*

Having determined that the district court erred, we must determine whether the error is a reversible error or a harmless error. *See* Minn. R. Crim. P. 31.01.[2]

In general, an error is a reversible error only if "there is a reasonable possibility that the error significantly affected the verdict." *State v. Bigbear*, 10 N.W.3d 48, 55 (Minn. 2024). Most often, the harmless-error test is applied to errors occurring during a jury trial, in which the defendant's guilt is determined by a general verdict, which does not reveal the

---

[2]The state argues that this court should apply the plain-error test to this part of Hill's second argument. The argument is without merit. Before the district court filed its order making findings of fact and conclusions of law, Hill did not know that the district court would consider statements he made during a rule 20.02 examination for the purpose of determining his not-guilty defense, in violation of rule 20.02, subdivision 6(2). Accordingly, Hill had no opportunity and, thus, no obligation to object. Hill did not forfeit this argument.

17

evidence on which jurors relied. In this case, however, Hill's guilt was determined in a court trial in which the district court made written findings of fact and conclusions of law.

In some cases involving a procedural error in a court trial, the appellate court rather easily can conclude that the error did *not* affect the verdict because the district court said so. For example, in *State v. Holliday*, 745 N.W.2d 556 (Minn. 2008), the supreme court concluded that the alleged error of admitting inadmissible hearsay evidence would be a harmless error because the district court "indicated that [the challenged] evidence did not affect its verdict" and "did not include in its findings of fact any information found solely in" the challenged evidence. *Id.* at 568.

On the other hand, in some cases involving a procedural error in a court trial, the appellate court rather easily can conclude that the error *did* affect the verdict. For example, in *State v. Spann*, 986 N.W.2d 205 (Minn. 2023), the district court erred by expressly invoking a legal doctrine that, as a matter of law, did not apply. *Id.* at 215-16. The supreme court reasoned, "Given that the district court expressly stated that the basis for its finding of Spann's intent was its erroneous application of the transferred intent doctrine, we cannot conclude that the verdict was surely unattributable to the district court's error." *Id.* at 216 (quotation omitted).

This case is unlike *Holliday* because the district court in this case did not disclaim any reliance on statements Hill made to Dr. Barbo during her rule 20.02 examination. This case is like *Spann* because the impact of the district court's error is apparent on the face of the order. The district court expressly referred to and relied on statements Hill made to Dr. Barbo during her rule 20.02 examination—evidence that is admissible only in the second

18

phase of trial—when making findings of fact and conclusions of law concerning an issue that needed to be determined in the first phase of trial. We must conclude that there is, at the very least, "a reasonable possibility that the error significantly affected the verdict." *See Bigbear*, 10 N.W.3d at 55. Thus, the error is not a harmless error.

### 3.      *Appellate Remedy*

Having determined that the district court committed reversible error, we must determine the appropriate appellate remedy.

In his principal brief, Hill argued both that this court should reverse and remand for a new trial and that we should "reverse his conviction and remand for further proceedings consistent with this court's opinion," but he did not cite any authority for any particular appellate remedy. The state initially argued only that this court should affirm with respect to this issue, without making an alternative argument concerning the appropriate appellate remedy in the event of reversible error. We requested supplemental memoranda concerning the appropriate appellate remedy in the event that we concluded that the district court erred by considering evidence of statements Hill made during a rule 20.02 examination for the purpose of determining his not-guilty defense. The parties have filed supplemental memoranda, which are helpful.

In the only two precedential opinions involving the same type of error, the appellate courts reversed and remanded for a new trial. *Lefthand*, 488 N.W.2d at 802; *Villalobos*, 613 N.W.2d at 770. But in each of those cases, the defendant's guilt was determined by a jury, apparently with a general verdict. *Lefthand*, 488 N.W.2d at 800; *Villalobos*, 613 N.W.2d at 768. A general verdict does not reveal to an appellate court the evidence on

19

which jurors relied.  Consequently, the proper remedy in *Lefthand* and *Villalobos* was a new trial.  But *Lefthand* and *Villalobos* do not necessarily determine the remedy in this case, which arises from a court trial, after which the district court filed an order with written findings of facts and conclusions of law that explain the reasons for the court's verdict and the evidence on which the verdict is based.

In *Spann*, the supreme court reasoned that, in prior cases in which district courts "misapplied the intent element in a bench trial," the supreme court "reversed the conviction and remanded to the district court to reconsider its verdict on the existing record."  986 N.W.2d at 216 (citing *State v. Al-Naseer*, 734 N.W.2d 679, 689 (Minn. 2007), and *State v. Mauer*, 741 N.W.2d 107, 116 (Minn. 2007)).  The supreme court concluded in *Spann* that "the proper remedy" was "to reverse Spann's assault-fear conviction and remand to the district court to reconsider its verdict on that count on the existing record." *Id.*  The remedy ordered in *Spann* is consistent with the general proposition that "[r]emedies should be appropriate to the violation, and a retrial is not required if a remand will remedy the violation." *State v. Manska*, 19 N.W.3d 196, 204 (Minn. 2025) (quotation omitted).

In this case, Hill is entitled to a determination of his not-guilty defense without consideration of the statements he made during Dr. Barbo's rule 20.02 examination.  Hill's rights may be vindicated by a remand to the district court with instructions "to reconsider its verdict on the existing record." *See Spann*, 986 N.W.2d at 216.  The proper "existing record" is the evidentiary record created during the first phase of trial, which does *not* include any evidence of statements Hill made during Dr. Barbo's rule 20.02 examination. Ordering reconsideration of Hill's not-guilty defense without consideration of inadmissible

20

evidence is analogous to ordering reconsideration of a defendant's guilt without consideration of an inapplicable legal doctrine. *See id.*

Thus, given the facts and circumstances of this case, "the proper remedy" for the district court's error of considering Hill's statements during Dr. Barbo's rule 20.02 examination when making findings and conclusions on his not-guilty defense is a remand to the district court with instructions to reconsider Hill's not-guilty defense without consideration of statements he made during Dr. Barbo's rule 20.02 examination or any evidence derived from those statements. *See id.*

## B. Bifurcation

As stated above, Hill contends that the district court erred by "holding the mental-illness stage of the trial before deciding whether Hill was guilty of the offense."[3]

Hill did not object at trial when the district court stated its intention to proceed with the second phase of trial without having determined the merits of his not-guilty defense in the first phase. Accordingly, we review for plain error. *See* Minn. R. Crim. P. 31.02. Under the plain-error test, an appellant is entitled to relief on an issue to which no objection

---

[3]One panel member, who dissents with respect to part II of the opinion of the court, asserts that Hill is not entitled to make the argument discussed in part II.B. on the ground that Hill "was not entitled to a bifurcated trial" for two reasons: first, he "filed an untimely notice of the defense of not guilty by reason of mental illness" and, second, "he did not present prima facie evidence of mental illness." *See infra* D2-D3. But the state does not make either of those arguments. To the contrary, the state's position is that "the district court properly bifurcated appellant's trial." Given that the district court actually bifurcated the trial, the district court was obligated to comply with the rules of criminal procedure governing bifurcated trials in cases in which a defendant asserts both a not-guilty defense and a mental-illness defense. In any event, the court also reverses and remands for the reasons stated in part II.A. and orders the same remedy for the errors in parts II.A. and II.B. Thus, the error identified in part II.B. is not essential to the court's ultimate disposition.

was made at trial only if (1) there is an error, (2) the error is plain, and (3) the error affects the appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If these three requirements are satisfied, the appellant also must satisfy a fourth requirement: that the error "seriously affects the fairness and integrity of the judicial proceedings." *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014); *see also Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022). If any requirement of the plain-error test is not satisfied, this court need not consider the other requirements. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).[4]

### 1. *Whether District Court Committed Reversible Error*

All four requirements of the plain-error test are satisfied. First, the district court erred when it conducted the second phase of trial without having determined the issues tried in the first phase. Second, the district court's error is plain because it is obviously contrary to the text of rule 20.02, subdivision 7, paragraphs (a) and (c). Third, the district court's error affected Hill's substantial rights because the district court's error caused the district court to erroneously consider evidence of statements that Hill made during Dr. Barbo's rule 20.02 examination when determining Hill's not-guilty defense. *See supra* II.A.1. Fourth, the district court's error seriously affected the fairness and integrity of the trial because it frustrated important policies underlying rule 20.02. As the supreme court explained in *Lefthand*, rule 20.02 "secur[es] the defendant's Fifth Amendment right against

---

[4]We acknowledge Hill's argument that this error is a structural error. "Only a small number of errors have been found to be structural errors." *State v. Kuhlmann*, 806 N.W.2d 844, 851 (Minn. 2011). Hill does not cite any opinion in which an appellate court has concluded that a district court's failure to bifurcate a trial pursuant to rule 20.02, subdivision 7, is a structural error.

self-incrimination" and, in addition, encourages defendants' cooperation with rule 20.02 examinations. 488 N.W.2d at 801. The latter purpose is important because "a defendant's true mental condition would not be discovered in many instances unless the psychiatrist can engage in a candid conversation with the defendant." *Id.* Thus, the district court's error in not bifurcating Hill's trial is a reversible error.

### 2. *Appellate Remedy*

Given that the district court's error is a reversible error, we must determine the proper appellate remedy. Hill was prejudiced by the district court's failure to bifurcate the trial in the same way and to the same extent that he was prejudiced by the district court's erroneous consideration of statements he made during Dr. Barbo's rule 20.02 examination. Hill has not identified any additional form of prejudice. Consequently, the proper remedy for the district court's failure to bifurcate Hill's trial is the same remedy ordered for the district court's erroneous consideration of statements he made during Dr. Barbo's rule 20.02 examination: a remand to the district court with instructions to reconsider Hill's not-guilty defense without consideration of statements he made during Dr. Barbo's rule 20.02 examination or any evidence derived from those statements. *See Spann*, 986 N.W.2d at 216.[5]

---

[5]In his second supplemental brief filed in October 2025, Hill argues that we should reverse and remand for a new trial in accordance with this court's nonprecedential opinion in *State v. Perkins*, No. C0-98-1720, 1999 WL 710626 (Minn. App. Sept. 14, 1999), *rev. denied* (Minn. Nov. 23, 1999). A careful reading of that opinion reveals that this court identified two errors: ineffective assistance of counsel and a violation of rule 20.02, subdivision 6(3). *Id.* at *2. We said that "a new trial is the remedy" in the paragraph discussing ineffective assistance of counsel. *Id.* In one sentence, we determined that the district court "also violated court rules pertaining to the use of statements made during

### III. *Pro Se* Supplemental Brief

Hill has filed a 45-page *pro se* supplemental brief in which he asserts 14 arguments.

Hill's primary *pro se* argument is that the district court erred by denying his post-trial motion for dismissal on speedy-trial grounds. The district court thoroughly analyzed this issue in its 15-page post-trial order. The district court noted that Hill first demanded a speedy trial on June 28, 2022, and that trial began 71 days later on September 7, 2022. The district court reasoned that Hill's constitutional right to a speedy trial was not violated because the district court found good cause to continue the trial by 15 days after Hill belatedly asserted his mental-illness defense and because Hill requested or was responsible for numerous other delays The district court did not err in that reasoning. *See State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005) (stating that "there is no speedy trial violation" if "overall delay in bringing a case to trial is the result of the defendant's actions").

Hill's 13 other *pro se* arguments refer to a variety of issues. In general, the remaining arguments are not well developed, lack argument, lack citation to legal authority, or lack citation to the record. We have carefully reviewed those *pro se* arguments, and we do not "see any obvious prejudicial error." *See State v. Montano*, 956 N.W.2d 643, 652 (Minn. 2021); *see also State v. Bartylla*, 755 N.W.2d 8, 22-23 (Minn. 2008) (affirming with respect to *pro se* issues "because no prejudicial error is obvious on mere inspection").

---

court-ordered mental examinations." *Id.* In any event, *Perkins* is a nonprecedential opinion and, thus, is not binding. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

Thus, the district court did not err in any of the ways asserted in Hill's *pro se* supplemental brief.

**Affirmed in part, reversed in part, and remanded.**

**REYES**, Judge (concurring in part, dissenting in part)

I concur with the majority that, by viewing appellant Nicholas Lee Hill's interrogation video, the district court did not conduct a deliberate, independent investigation. However, as I did in our prior precedential opinion in this case, I respectfully dissent. *See State v. Hill*, 10 N.W.3d 317, 328-33 (Minn. App. 2024) (*Hill I*) (Reyes, J., dissenting), *rev'd*, 23 N.W.3d 824 (Minn. 2025) (*Hill II*).

I disagree with the majority's conclusion that the district court erred by relying on the Minn. R. Crim. P. 20.02 mental examination in its conclusions of law that appellant had the requisite intent to commit a sexual assault necessary for attempted first-degree criminal sexual conduct. I would apply the plain-error standard to review this issue. Under this standard, appellant did not meet his burden to prove that the district court committed an error that affected his substantial rights. Moreover, given the unusual circumstances surrounding this court trial, during which the district court went out of its way to assist the self-represented appellant, I am not persuaded that the public would question the fairness and integrity of the proceedings necessitating a new trial.

As an initial matter, I disagree with the majority's application of the harmless-error standard of review to the issue of whether the district court erred by "using statements Hill made during a rule 20 examination to find him guilty." Appellant does not identify when he raised the specific objections before the district court that he raises now on appeal. And I am unaware of any cases in which an appellate court has applied harmless-error review to a similar factual scenario.

"Under the plain-error doctrine, a defendant must establish (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights." *Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022). "An error is plain if it is clear or obvious," which is typically established "if the error contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (quotation omitted). "When the defendant satisfies these requirements, an appellate court may correct the error *only* when it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski*, 972 N.W.2d at 356. Applying the plain-error standard, appellant has not met his burden to show that he is entitled to relief.

Appellant argues that the district court erred by failing to find him guilty before proceeding to the second phase of the bifurcated court trial, which led to the more serious and reversible error of it relying on appellant's statements in the rule 20.02 examination to find him guilty.[1] I disagree. Appellant has not shown any error in the manner in which the district court conducted the bifurcated court trial because he was not entitled to a bifurcated trial in the first instance. Appellant filed an untimely notice of the defense of not guilty by reason of mental illness. He filed it just before the trial started instead of before the omnibus hearing, as required by Minn. R. Crim. P. 9.02, subd. 1(5)(c). Because he filed an untimely notice, the district court had no obligation to conduct a bifurcated trial.

---

[1] I disagree with the majority that these are two separate errors. Even appellant acknowledges that these are two "interlinked" issues. Regardless of any alleged error in not properly conducting the bifurcated trial, assuming appellant was entitled to a bifurcated trial in the first instance, the question is whether appellant's rule 20.02 statements were considered in determining his guilt.

*See* Minn. R. Crim. P. 20.02, subd. 7(a) (mandating bifurcated trial only if notice has been given under rule 9.02, subdivision 1(5)).

In addition to filing an untimely notice, appellant was not entitled to raise a mental-illness defense because he did not present prima facie evidence of a mental illness. Before the bifurcated trial process under Minn. R. Crim. P. 20.02 is required, "a defendant must present prima facie evidence of mental illness." *State v. Martin*, 591 N.W.2d 481, 487 (Minn. 1999). "[E]vidence submitted by the defendant to warrant a bifurcated trial must be sufficient to establish, without consideration of any contradictory evidence, that 'because of mental illness or cognitive impairment, the defendant, at the time of committing the alleged criminal act, was laboring under such a defect of reason as not to know the nature of the act or that it was wrong.'" *State v. Hinckley*, 5 N.W.3d 680, 686 (Minn. 2024) (quoting Minn. R. Crim. P. 20.02, subd. 4(b)). In other words, appellant had to show that (1) he had a mental illness and (2) due to that mental illness, he did not know the nature of his acts or that they were wrong. The state's expert did not diagnose appellant with a mental illness or cognitive impairment. Appellant's expert concluded that appellant was suffering from mental illness. However, both experts agreed that appellant *did not* meet the standard necessary to satisfy the mental-illness defense because he knew the nature of his act and that it was wrong. Because appellant filed an untimely notice, and he did not make a prima facie showing that he was entitled to raise the mental-illness defense, the district court did not plainly err because it had no obligation to conduct a bifurcated trial.

I also disagree that the district court's reference to appellant's self-serving statements made in the rule 20.02 examination in which he denied sexual intent and accused the victim of being threatening significantly affected the verdict. To satisfy the third prong of the plain-error test, appellant must show that "the error was prejudicial and affected the outcome of the case."[2] *Matthews*, 779 N.W.2d at 549. To determine whether appellant can meet this burden, we consider several nonexclusive factors, including: "(1) the manner in which the party presented the evidence, (2) whether the evidence was highly persuasive, (3) whether the party who offered the evidence used it in closing argument, and (4) whether the defense effectively countered the evidence." *State v. Bigbear*, 10 N.W.3d 48, 54 (Minn. 2024) (quotation omitted). Additionally, "[s]trong evidence of guilt undermines the persuasive value of wrongly admitted evidence." *Id.* (quotation omitted).

Some of the factors identified in *Bigbear* do not apply to the circumstances here— a court trial in which the district court properly received evidence of appellant's mental condition at the mental-illness phase of the bifurcated trial, the parties submitted written closing arguments, and the district court and not a party referenced appellant's statements in the mental examination in its conclusions of law finding him guilty. Additionally, unlike a jury trial in which the factfinder's decision-making is unknown, we know what evidence the district court relied on in reaching its verdict. The district court relied on appellant's

---

[2] Because the third prong of the plain-error standard "is the equivalent of a harmless error analysis," *State v. Matthews*, 800 N.W.2d 629, 634 (Minn. 2011), even if I applied the harmless-error standard, appellant's argument would likewise fail.

statement in his custodial interrogation that he "thought about raping her" to conclude that he had the intent to commit sexual penetration without victim's consent. His confession is direct evidence of his intent. *See State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (relying on statement, "I want him dead," as direct evidence of mens rea). The district court *did not* rely on appellant's inconsistent, self-serving statements in the rule 20.02 examination to show his intent, an essential element of the crime of which he was convicted. *See* Minn. Stat. § 609.17, subd. 1 (2018); Minn. Stat. § 609.342, subd. 1(e)(i) (Supp. 2019). Rather, the court considered these statements merely as showing consciousness of guilt. Additionally, the district court's conclusions of law provided compelling reasoning for its finding of intent and is well supported independent of its mention of the examination statements. In light of this and the district court's express reliance on appellant's confession as evidence of his intent, I am not persuaded that any alleged error in considering his contrary statement in the rule 20.02 examination affected appellant's substantial rights.

Finally, this is not a case in which failing to correct this unobjected-to error "would have an impact beyond the current case by causing the public to seriously question whether our court system has integrity and generally offers accused persons a fair trial." *Pulczinski*, 972 N.W.2d at 356. Quite the contrary. The record shows that the district court bent over backwards to ensure that appellant, a self-represented litigant, had a fair trial by: appointing advisory counsel; allowing appellant to relitigate the admissibility of his confession and reopen the record to consider his arguments that his confession was involuntary because he was suffering delusions; approving funds so he could retain an expert to support these

claims; continuing the trial to permit him to offer a mental-illness defense; and accommodating the availability of his witnesses for his suppression hearing and for trial. Based on the circumstances of this case, even if I were to assume that it was error for the district court to consider appellant's self-serving statement in the rule 20.02 examination in the guilt-phase of the court trial, I am not persuaded that failing to correct this error would cause the public to question seriously the fairness, integrity, or public reputation of judicial proceedings. This requirement is difficult to satisfy, and I would conclude that appellant fails to do so. *Ramon v. State*, 399 N.W.2d 138, 141 (Minn. App. 1987) ("Courts exercise their power to notice plain error *only in exceptional circumstances*." (emphasis added)).

I would therefore affirm appellant's conviction.